IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HAAS OUTDOORS, INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | 1:18-CV-978-RP |
| § | | |
| DRYSHOD INTERNATIONAL, LLC, § | | |
| and JAMES K. DONOHUE, § | | |
| § | | |
| Defendants. § | | |

| | | |
|---|---|---|
| DRYSHOD INTERNATIONAL, LLC, § | | |
| and JAMES K. DONOHUE, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | 1:18-CV-596-RP |
| § | | (consolidated) |
| HAAS OUTDOORS, INC.; § | | |
| TOXEY HAAS; and WILLIAM SUGG; § | | |
| § | | |
| Defendants. § | | |

**ORDER**

Before the Court is a motion to dismiss filed in the lead case, 1:18-CV-978-RP, by Defendants Dryshod International, LLC ("Dryshod") and James Donohue ("Donohue") (together, "Defendants"). (Dkt. 129). Plaintiff Haas Outdoors, Inc. ("Haas") filed a response, (Dkt. 134), and Defendants replied, (Dkt. 136). Having considered the parties' briefs, the record, and the relevant law, the Court will grant the motion.

**I. BACKGROUND**

Haas alleges the following background facts. Haas is a relatively sizable outdoor-goods company that has designed and manufactured camouflage patterns, clothing, and accessories since 1986. (Am. Compl., Dkt. 126, at 3–4). Earlier in his career, Donohue founded a boot manufacturing

1

company, Muck Boot Company ("Muck Boot"), that licensed Haas's "MOSSY OAK" patterns, including its "NEW BREAK-UP" pattern. (*Id.* at 5). Donohue set up distributor groups to sell his Muck Boot products, which included MOSSY OAK branded products. (*Id.*). Donohue left Muck boot in 2004, but when Muck Boot took its distribution in-house in 2017, its former distributors approached Donohue about creating a new set of boot products. (*Id.*). Setting out to do so, Donohue founded Dryshod and introduced several hunting boot models. (*Id.*). His distributors asked that the boots feature MOSSY OAK patterns. (*Id.*).

Donohue then contacted Haas to negotiate a license to use MOSSY OAK patterns; he allegedly said that Dryshod boots would "have a better chance of achieving mass appeal" if they featured MOSSY OAK patterns. (*Id.* at 6). After several months of negotiations, however, Donohue decided not to license Haas's patterns and to instead use patterns that he designed himself. (*Id.*). Donohue called his design "MOBU" and has sought to register MOBU as a trademark. (*Id.* at 7). According to Haas, Donohue's choice to use MOBU is no accident: Haas customers and distributors, including Muck Boot, have colloquially referred to MOSSY OAK BREAK-UP patterns as "MOBU" for years. (*Id.* at 7). Defendants allegedly claim their MOBU mark stands for "My Own Break-Up." (*Id.*).

Haas, believing that the MOBU pattern infringes its copyrighted NEW BREAK-UP pattern and that the MOBU mark infringes its MOSSY OAK and BREAK-UP trademarks, sued Defendants in February 2018 in the Northern District of Mississippi. (Dkt. 1). The case has since been transferred to this district, (Dkts. 96, 97), and consolidated with Defendants' countersuit, (Dk. 111). In its action against Defendants, Haas asserts five causes of action: (1) copyright infringement in violation of 17 U.S.C. § 501; (2) trademark violation in violation of 15 U.S.C. § 1114; (3) trademark dilution in violation of 15 U.S.C. § 1125; (4) trademark infringement and dilution in violation of Texas and Mississippi law; and (5) trademark denial or cancellation under 15 U.S.C.

§ 1052(d). (*Id.* at 7–14). Defendants filed a motion to dismiss the first three of these claims against them under Federal Rule of Civil Procedure 12(b)(6). (Mot., Dkt. 129).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th

Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

Defendants' motion pertains to Haas's federal copyright-infringement claim, its federal trademark-infringement claim, and its federal trademark-dilution claim. (Mot., Dkt. 129, at 4; Reply, Dkt. 136). The Court will address each in turn.

### A. Copyright Infringement

To prove copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 549 (5th Cir. 2015) (quoting *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007)). Defendants contest only the final prong: substantial similarity. (Mot., Dkt. 129, at 5–16).

To support a claim of copyright infringement, a purported copy "must bear a substantial similarity to the protected aspects of the original." *Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001). When a copyrighted work contains unprotectable elements, the first step is to "distinguish between protectable and unprotectable elements of the copyrighted work." *Nola Spice*, 783 F.3d at 550. Afterward, the question is "whether the allegedly infringing work bears a substantial similarity to the protectable aspects of the original work." *Id.*

To assess substantial similarity, "a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Id.* (quoting *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997)). This determination is an objective one from the standpoint of an "ordinary observer": would a layman

4

detect piracy "without any aid or suggestion or critical analysis by others"? *Peel & Co.*, 238 F.3d at 398; *see also id.* (citation and quotation marks omitted) ("The reaction of the public to the matter should be spontaneous and immediate."). Although the question of substantial similarity "typically should be left to the factfinder," it can be decided as a matter of law in appropriate circumstances. *Nola Spice*, 783 F.3d at 550.

Haas alleges that Defendants have copied a protectable combination of elements in its MOSSY OAK NEW BREAK-UP pattern:

> [a.] Primary background for the pattern consisting of dark, deep-cracked oak tree bark; [b.] strategic use of diagonally cross-layered smaller branches covered with lichen; [c.] use of shadows and other black spaces creating an overall dark pattern; [d.] the incongruous and contrasting use of live, green, oak leaves and dark, dead, oak leaves, reflecting different seasons of the year; [e.] extreme similarity in color tone of the leaves, branches, and bark; [f.] use of a watermark on the pattern itself (MOSSY OAK BREAK-UP vs. MOBU); [g.] use of computer manipulation of photos to blend tones, highlight or diminish elements, and create a uniform appearance; and [h.] use and arrangement of repeating elements to establish a multi-directional pattern.

(Am. Compl., Dkt. 126, at 8). That pattern is depicted on the left below, alongside a boot featuring Defendants' allegedly infringing pattern:

 

(Am. Compl. Exhs. C & D, Dkt. 129-1). To illustrate the patterns' similarity, Haas alleges that Defendants' MOBU-patterned boots "practically merge" with the Haas's NEW BREAK-UP pattern when placed on top of it, as depicted below.



(Am. Compl., Dkt. 126, at 9).

Defendants argue that the shape or color of bark, sticks, or leaves is not protectable; only the "particular arrangement" of bark, sticks, and leaves is. (Mot., Dkt. 129, at 7–8).[1] In comparing the arrangement of the two companies' patterns, Defendants say there is "no similarity." (*Id.* at 9). Haas's pattern is "overall lighter in color," featuring "brown, yellow, and bright green leaves," as opposed to the "grey, copper, and dark moss green" leaves in Dryshod's. (*Id.*). Moreover,

---

[1] Defendants walk through several elements of Haas's NEW BREAK-UP pattern and argue that each element, individually, is not eligible for protection. (Mot., Dkt. 129, at 10–13). For example, Defendants argue that "the idea to use lichen-covered branches" is not protectable because they are "products of nature." (*Id.* at 11). But this argument is irrelevant, as Haas does not allege that the elements are individually protectable; Haas alleges only that the "combination of elements" that together comprises the NEW BREAK-UP pattern is protectable. (Am. Compl., Dkt. 126, at 8).

6

Defendants say, the two patterns feature different plants: red oak for Haas's pattern versus live oak, Spanish oak, and mountain laurel for Dryshod's. (*Id.*). Defendants' pattern also includes ball moss. (*Id.*).

But based on the allegation in Haas's amended complaint, the patterns' differences are outstripped by their similarities. Whatever the actual differences in the oak-tree species depicted, both patterns feature a primary background consisting of dark oak tree bark. (*See* Am. Compl., Dkt. 126, at 8–10).[2] Both feature diagonal, cross-layered smaller branches and twigs covered with lichen. (*Id.*). Both use shadows and black spaces to generally darken the pattern. (*Id.*). Both contrast live, green, oak leaves with dark, dead, oak leaves. (*Id.*). Both overlay the pattern with a watermark feature. (*Id.*). Both use repeating elements to establish a multi-directional pattern. (*Id.*). These similarities are highlighted in the side-by-side image featured in Haas's pleading, in which boots featuring Dryshod's MOBU pattern sit atop—and blend in with—Haas's NEW BREAK-UP pattern. (*See id.* at 9). As alleged, the two patterns could be adjudged by a reasonable factfinder to be substantially similar. Haas has therefore plausibly alleged that Defendants' MOBU pattern infringes its NEW BREAK-UP pattern. (*Id.* at 7–11). The Court will not dismiss this claim.

### B. Trademark Infringement

Haas alleges that it has federally registered the MOSSY OAK and BREAK-UP marks and that Defendants are infringing both marks in violation of 15 U.S.C. § 1114.[3] MOSSY OAK is a brand of camo patterns, one which includes the BREAK-UP family of patterns. (Am. Compl., Dkt. 126, at 6). Haas "frequently uses the marks together" when describing its goods, labeling them as MOSSY OAK BREAK-UP items. (*Id.* at 4). According to Haas, the public, its licensees, and many

---

[2] Again, similarity will ultimately be determined according to the judgment of a lay person, not a dendrologist. *Nola Spice*, 783 F.3d at 550.

[3] Haas also asserts infringement claims for its trademark rights in the MOBU and MOSSY OAK BREAK-UP marks under 15 U.S.C. § 1125. (Am. Compl., Dkt. 126, at 11–12). Defendants emphasize that they seek dismissal only of Haas's Section 1114 claims arising out of its MOSSY OAK and BREAK-UP marks. (Mot., Dkt. 129, at 16 n.4; Reply, Dkt. 136, at 7 n.3).

sales outlets—including Donohue's former company Muck Boot—"refer to the MOSSY OAK® BREAK-UP® pattern" as "MOBU." (*Id.* at 7). Given this colloquial usage, Haas argues that branding Dryshod patterns as "MOBU" for "My Own Break-Up" is a "rip off" of MOSSY OAK BREAK-UP. (Resp., Dkt. 134, at 18).

To plausibly allege a trademark infringement claim under the Lanham Act, Haas must allege (1) ownership in a legally protectable mark[4] and (2) infringement resulting from a likelihood of confusion. *Bd. of Supvrs. for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008). Defendants dispute only the likelihood-of-confusion prong, arguing that Haas can recover under Section 1114 only for the infringement of registered trademarks and that MOSSY OAK and BREAK UP are not registered together, but separately. (Mot., Dkt. 129, at 16). According to Defendants, Haas must therefore ultimately prove that customers are likely to confuse the MOBU mark for either the MOSSY OAK mark or the BREAK-UP mark individually. (Reply, Dkt. 136, at 6). In other words, Defendants believe Haas cannot recover under Section 1114 for infringing MOSSY OAK BREAK-UP because that mark is unregistered, and Haas cannot recover under Section 1114 for infringing either registered mark individually because the MOBU mark is "wholly dissimilar in appearance and sound" from both the MOSSY OAK and BREAK-UP marks when considered individually. (Mot., Dkt. 129, at 17; Reply, Dkt. 136, at 7).

Defendants are correct on the first point but wrong, at this stage, on the second. It is true that Section 1114 provides a cause of action only for infringement of a registered mark. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.8 (5th Cir. 2010). But that does not mean that Haas cannot state a claim for relief under Section 1114 simply because MOBU does not look or sound like the MOSSY OAK and BREAK-UP marks individually. Mark similarity is only one of eight nonexhaustive digits of confusion that courts use to determine whether a plaintiff has

---

[4] Defendants do not dispute Haas's allegations that it owns either mark or that either mark is legally protectable. (Mot., Dkt. 129, at 16–17).

8

demonstrated a likelihood of similarity between two marks. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). The other seven regularly considered digits are the type of trademark, product similarity, outlet and purchaser identity, advertising media identity, the defendant's intent, actual confusion, and care exercised by potential purchasers. *Id.* No one digit is dispositive, and the digits may weigh differently from case to case. *Id.*

Haas's amended complaint contains allegations relevant to these other digits. The parties sell similar products. (Am. Compl., Dkt. 126, at 10). Haas alleges that its customers, licensees, and retail sellers have long referred to the MOSSY OAK NEW BREAK-UP pattern as "MOBU." (*Id.* at 7). Allegedly knowing that to be true, Defendants' choice to use "MOBU"—"My Own Break-Up," (*id.*)—is relevant to their intent to confuse. *Xtreme Lashes*, 576 F.3d at 229 ("A junior user must avoid choosing a mark which may cause confusion with the senior user's mark."). MOSSY OAK and BREAK-UP are plausibly at least suggestive marks, which are protectable. *Id.* at 227 (stating that suggestive marks "are deemed inherently distinctive and are entitled to protection"). Relatively inexpensive apparel is not the sort of item for which a buyer takes particular care in selecting, which "increas[es] the risk of confusion." *Smack Apparel*, 550 F.3d at 483. Discovery may plausibly reveal that the parties use similar advertising media and share retail outlets and purchasers. It may also reveal evidence of actual confusion. A factfinder could plausibly agree that MOBU is dissimilar from the MOSSY OAK and BREAK UP marks but nonetheless conclude that it is likely to cause confusion with those marks after weighing that dissimilarity alongside the other digits of confusion. Accordingly, Haas has stated a plausible claim for relief under Section 1114. The Court will not dismiss that claim.

### C. Trademark Dilution

Haas alleges that Defendants have violated the Trademark Dilution Revision Act ("TDRA"), 15 U.S.C. § 1125(c), by diluting its MOSSY OAK and BREAK-UP marks through their use of the

MOBU mark. (Am. Compl., Dkt. 126, at 12–13). The TDRA bars another person's commercial "use of a mark or trade name in commerce [in a manner] that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of the actual or likely confusion." *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (quoting 15 U.S.C. § 1125(c)(1)). To state a dilution claim under the TDRA, Haas must show that (1) "it owns a famous and distinctive mark;" (2) that Defendants have commenced using Haas' marks "in a manner that dilutes those marks;" (3) that the similarity between Defendants' marks and the Haas marks "gives rise to an association between the two marks;" and (4) that "the association is likely to impair the distinctiveness" of the Haas marks or "harm the reputation" of the Haas marks. *Id.*

Defendants seek dismissal of Haas's dilution claim on the grounds that Haas has not plausibly alleged facts to support the first or third elements of such a claim. (Mot., Dkt. 129, at 17). First, they argue Haas has not plausibly alleged that its MOSSY OAK and BREAK-UP marks are sufficiently famous. (*Id.* at 18–19). Second, they argue that the Haas marks are too dissimilar to the MOBU mark for dilution to be plausible. (*Id.* at 19–20).

Defendants are correct that Section 1125 sets a high bar for fame. (Mot., Dkt. 129, at 21). A mark is famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To be "widely recognized" is to fall within "a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 674 (W.D. Tex. 2008) (citing *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999)); H.R. Rep. No. 109–23, at 25 (2005). Examples of qualifying marks provided in the legislative history of Section 1125 include DuPont, Kodak, and Buick. *Regents*, 550 F. Supp. 2d at 674; H.R. Rep. No. 104–374, at 3 (1995). "In short, for purposes

of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. In other words, the mark must be a household name." *Regents*, 550 F. Supp. 2d at 674 (citing *Thane Int'l., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002)). Factors relevant to assessing fame include the "duration, extent, and geographic reach of advertising and publicity of the mark"; the "amount, volume, and geographic extent of sales of goods or services offered under the mark"; the "extent of actual recognition of the mark"; and whether the mark is registered. 15 U.S.C. § 1125(c)(2)(A).

Haas alleges that it is "one of the nation's largest producers" of camouflage patterns, clothing, and accessories. (Am. Compl., Dkt. 126, at 3). It has made and sold goods under the MOSSY OAK mark since 1986, including product lines featuring the BREAK-UP mark. (*Id.*). According to Haas, these marks have been "widely advertised" and sold "extensively" throughout the United States and abroad. (*Id.*). Haas alleges that the marks have received "widespread and favorable public acceptance and recognition." (*Id.*). In particular, BREAK-UP-marked products have become "one of the most popular, and best-selling, family of camouflage patterns in the history of the camouflage industry." (*Id.* at 3–4). Haas has licensed its marks and marked patterns to over 1,000 licensees. (*Id.*). The marks are registered. (*Id.* at 4).

Defendants argue that Haas's dilution claim must be dismissed because MOSSY OAK and BREAK-UP are not household names and that fame in a "niche market" does not support a federal dilution claim. (Mot., Dkt. 129, at 18). Indeed, this Court has previously held that the University of Texas Longhorn's silhouette logo is not sufficiently famous despite evidence that the logo was regularly featured on nationally televised and widely viewed broadcasts, Wheaties boxes, and products sold nationally at large retailers such as Wal-Mart and Target. *Regents*, 550 F. Supp. 2d at 677–79. Perhaps, at a later stage in this litigation, Haas will likewise be unable to clear the substantial bar for establishing fame. But at this stage in the litigation, Haas has sufficiently alleged the fame of

its MOSSY OAK and BREAK-UP marks and has thus raised its right to relief about a speculative level. *See YETI Coolers, LLC v. Imagen Brands, LLC*, 1:16-CV-00578-RP, 2017 WL 2199012, at *8 (W.D. Tex. May 18, 2017) (denying a motion to dismiss the plaintiff's federal dilution claim based on similar allegations).

As for Defendants' second argument—that the MOBU mark is too dissimilar from Haas's marks to dilute them—the relevant inquiry is for dilution-by-blurring is "'whether, under the circumstances of the use,' the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Cottonwood Fin. Ltd. v. Cash Store Fin. Services, Inc.*, 778 F. Supp. 2d 726, 750 (N.D. Tex. 2011) (quoting *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998)). In making that determination, courts may consider "all relevant factors." 15 U.S.C. § 1125(c)(2)(B). Such factors include those digits of confusion relevant to trademark infringement claims. *See Cottonwood Financial*, 778 F. Supp. 2d at 749 (finding the eight digits of confusion relevant to its dilution analysis). The Court has already discussed at length the reasons why the MOBU mark might cause confusion, based on Haas's allegations. Those same reasons are likewise sufficient to plausibly allege similarity for purposes of dilution at this stage in the litigation. The Court will therefore not dismiss Haas's federal dilution claim.

### IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 129), is **DENIED**.

**SIGNED** on July 15, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE