IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HAAS OUTDOORS, INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | 1:18-CV-978-RP |
| § | | |
| DRYSHOD INTERNATIONAL, LLC, § | | |
| and JAMES K. DONOHUE, § | | |
| § | | |
| Defendants. § | | |

_____

| | | |
|---|---|---|
| DRYSHOD INTERNATIONAL, LLC, § | | |
| and JAMES K. DONOHUE, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | 1:18-CV-596-RP |
| § | | (consolidated) |
| HAAS OUTDOORS, INC., § | | |
| TOXEY HAAS, and WILLIAM SUGG, § | | |
| § | | |
| Defendants. § | | |

**ORDER**

Before the Court are Defendants Dryshod International, LLC and James K. Donahue's (together "Dryshod") six motions in limine, (Mot. Limine, Dkt. 229), Plaintiff Haas Outdoors's ("Haas") response, (Resp., Dkt. 221-5), and Dryshod's reply, (Reply, Dkt. 230). The Court held a final pretrial conference in this case on February 4, 2020, and made the following rulings:

- **Motion in Limine No. 2:** Exclude email correspondence from Paul Matonich unless he testifies live at trial—**GRANTED**;
- **Motion in Limine No. 3:** Preclude Haas from arguing that "MOBU" is arbitrary and fanciful—**DENIED**; and
- **Motion in Limine No. 4:** Preclude Haas from making direct comparisons between the unprotectable elements within NEW BREAK-UP and Dryshod's camouflage pattern—**DENIED**.

The Court took the remaining three motions in limine under advisement. This Order addresses those remaining three motions in limine. Having considered the parties' briefs, the record, and the relevant law, the Court finds Dryshod's remaining motions should be denied.

1

I.  **Motion in Limine No. 1: Exclude expert and lay testimony from Cindy Reed regarding the reasonable royalty rate.**

Dryshod asks the Court to preclude Cindy Reed ("Reed") from providing any lay or expert opinion testimony regarding Haas's claim of reasonable royalty damages for copyright and trademark infringement. (Mot. Limine, Dkt. 229, at 2). Dryshod argues that "[a]lthough Reed did not submit an expert report under Fed. R. Civ. P. 26(a)(2)(B), Haas is attempting to elicit expert opinion testimony from Reed under Rule 702." (*Id.*). And though Dryshod concedes that "lay witnesses may testify as experts," it insists Haas's summary of the facts and opinions to which Reed will testify is insufficient under Rule 26(a)(2)(C). (*Id.*). Dryshod argues the summary provided by Haas "fails to disclose any facts and provides no analysis whatsoever to explain what facts Reed used and what method Reed used to arrive at her opinion [on the reasonable royalty rate]." (*Id.* at 2–3). Moreover, Dryshod says Haas "did not provide any explanation of Reed's opinion, either in interrogatory responses or at deposition," and it would therefore "be highly prejudicial to allow Reed to testify as an expert regarding the determination of the reasonable royalty rate since Dryshod has not had the ability to review her methodology and underlying data." (*Id.* at 3, 4).

Meanwhile, Haas contends that Reed was not required to provide a written report under Rule 26(a)(2)(B) because Reed was not retained or specifically employed to provide expert testimony, but is instead a Haas employee who has "reviewed, negotiated, and administered thousands of licenses concerning the pattern at issue and also the MOSSY OAK and BREAK-UP marks," and "marks for footwear products" for nineteen years. (Resp., Dkt. 221-5, at 3). Because Reed was not required to provide a written report, Haas maintains Rule 26(a)(2)(C) governs Haas's disclosure requirements with respect to Reed. (*Id.* at 2). Pursuant to that rule, Haas "was required to provide (and did provide) an identification of the subject matter on which Ms. Reed was expected to present evidence and a summary of the facts and opinions to which she is expected to testify." (*Id.* at 2–3).

2

As for Dryshod's other objections to Reed's testimony, Haas argues they are untimely because the Scheduling Order in this case required parties to file all objections to the reliability of an expert's proposed testimony by October 11, 2019. (*Id.* at 3 (citing Scheduling Order, Dkt. 121, at 2)). Dryshod, on the other hand, contends its motion is timely "because the Scheduling Order deadline for objections to an expert's proposed testimony can reasonably be interpreted as applicable only to retained experts who provide a written report." (Reply, Dkt. 230, at 2).

Federal Rule of Civil Procedure 26 requires parties to disclose the identity of any person who will provide expert testimony at trial. Fed. R. Civ. P. 26(a)(2)(A). "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the proponent of the expert testimony must provide a written report prepared and signed by the witness. *Walker v. Target Corp.*, No. 2:16-CV-42-KS-MTP, 2017 WL 2683803, at *1 (S.D. Miss. June 21, 2017) (quoting Fed. R. Civ. P. 26(a)(2)(B)). But if the expert witness is not required to provide a written report, the designation must merely provide the subject matter of the expert's testimony and a summary of the facts and opinions to which she is expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

Courts have interpreted a "summary of opinions" to mean "a brief account of the main opinions of the expert" and those opinions "must state a view or judgment regarding a matter that affects the outcome of the case." *Knighton v. Lawrence*, No. SA-14-CV-718-XR, 2016 WL 4250484, at *2 (W.D. Tex. Aug. 9, 2016). A "summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice." *Velasquez v. Danny Herman Trucking, Inc.*, No. CV H-14-2791, 2015 WL 8764271, at *2 (S.D. Tex. Dec. 15, 2015).

The Court concludes that because Reed was not "retained or specially employed to provide expert testimony in this case" and is in fact a longtime Haas Outdoors employee, Haas

3

complied with Rule 26(a)(2)(C)'s disclosure requirements. *See* Fed. R. Civ. P. 26(a)(2)(C). Haas's expert designation notified Dryshod that Reed "is expected to offer fact testimony about what royalties are charged by Haas Outdoors to licensees, including footwear licensees." (Expert Disclosures, Dkt. 142, at 4). Haas further disclosed that Reed would "offer her expert opinions in this matter as to the reasonable royalty rate to which Haas Outdoors is entitled based on the Dryshod Parties' infringing pattern and marks." (*Id.*). Pursuant to the protective order in this case, Haas then emailed Dryshod the reasonable royalty rate for children's and adult footwear to which Reed was expected to testify. (Email, Dkt. 229-1, at 2). While Dryshod contends Haas did not explain "what method Reed used to arrive at her opinion [about] the reasonable royalty rate," the more stringent requirements of Rule 26(a)(2)(B), including the requirement that Reed provide a report explaining "the basis and reasons" for her opinion and "the facts or data considered by her in forming them" do not apply. (Mot. Limine, Dkt. 229, at 3); *see also* Fed. R. Civ. P. 26(2)(B). Dryshod's remaining objections are untimely. (*See* Scheduling Order, Dkt. 121, at 2 (setting October 11, 2019 as the deadline for all objections to the reliability of an expert's proposed testimony)).

Accordingly, Dryshod's motion to exclude Reed's testimony regarding the reasonable royalty rate is **DENIED**.

### II.   Motion in Limine No. 5: Exclude supplemental expert opinions from Robert Alexander regarding his determination of the reasonable royalty.

Dryshod also asks the Court to preclude Haas's damages expert, Robert Alexander ("Alexander"), from "relying on or presenting any testimony or opinions" provided in his supplemental declaration because it was "submitted months after the deadline to serve expert reports." (Mot. Limine, Dkt. 229, at 11). Haas argues Dryshod's motion is moot because United States Magistrate Judge Mark Lane "heard argument concerning the declaration submitted by [Alexander] and denied that basis for rejecting [Alexander's] testimony from the bench" when he denied Dryshod's prior motion to strike Alexander's report and opinions. (Resp., Dkt. 221-2, at

14). Though Dryshod concedes that its motion to strike argued that Alexander's supplemental declaration was untimely, it contends Judge Lane "did not rule on that argument." (*Id.*).

Dryshod's motion is moot. In its reply brief in support of its motion to strike Alexander's report and opinion, Dryshod argued that Alexander's "supplemental opinion should be excluded because it violated the disclosure requirements of Fed. R. Civ. P. 26." (Reply, Dkt. 177-1, at 8). In support, Dryshod expressly argued that Haas disclosed Alexander's supplemental report after the expert deadline had passed. (*Id.*). Thus, Dryshod's timeliness argument was before Judge Lane when he considered Dryshod's motion to strike Alexander's expert opinions. (*See* Order, Dkt. 220, at 3 (noting that Judge Lane "reviewed the relevant filings and held a hearing on all referred motions on January 23, 2020" before reaching his decision to deny Dryshod's motion to exclude Alexander's expert opinions)). After reviewing the parties' briefing and holding a full hearing on Dryshod's motion, Judge Lane found Dryshod's arguments unpersuasive. (*Id.* at 6). The Court declines to revisit Judge Lane's well-reasoned Order.

Accordingly, Dryshod's motion to exclude Alexander's supplemental expert opinions regarding the reasonable royalty rate is **MOOT**.

### III.   Motion in Limine No. 6: Exclude the use of the "mini" NEW BREAK-UP pattern.

Dryshod's sixth motion in limine asks the Court to "preclude Haas from presenting any arguments, expert opinions, testimony, or exhibits featuring or relating to Haas' 'mini pattern' of NEW BREAK-UP." (Mot. Limine, Dkt. 229, at 12). Invoking *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,[1] Dryshod argues that Haas should be precluded from presenting the mini pattern at trial because Haas's copyright is "limited to the 'full size pattern.'" (*Id.*). Dryshod contends that allowing Haas to use a "non-copyrighted [mini] pattern to prove substantial similarity" between Haas's NEW BREAK-UP pattern and Dryshod's camouflage pattern would be "highly

---

[1] *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 153 (E.D.N.Y. 2002) (*aff'd sub nom. Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003)) (*abrogated by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)).

prejudicial," particularly because Dryshod's camouflage pattern was designed "at a smaller scale." (Mot. Limine, Dkt. 229, at 14; Reply, Dkt. 230, at 10). Dryshod further argues that "Haas's mini pattern, as placed in repeat on fabric, is a derivative work because 'the embellishment or expansion of the original design in repeat . . . constitutes modest but sufficient originality to support' copyrightability in the mini—which makes it a separate work from the full size." (Reply, Dkt. 230, at 11 (citing *Cranston Print Works Co. v. J. Mason Prods.*, 1998 U.S. Dist. LEXIS 18004, at *6 (S.D.N.Y. Nov. 13, 1998)).

Haas first objects to Dryshod's motion because it contends Judge Lane already decided this issue when he denied Dryshod's motion to exclude the mini pattern. (Resp., Dkt. 221-5, at 14). The Court disagrees. While Judge Lane did deny Dryshod's motion to exclude the mini pattern, he did so only after concluding that Dryshod's objections to the mini pattern were best addressed at trial. (*See* Order, Dkt. 220, at 9; *see also id.* at 8 n.1 ("[T]he undersigned finds that any alleged differences between the certified copy and Haas Outdoors's additional representations of the pattern are best addressed at trial.")). Accordingly, Dryshod properly objects to the use of the mini pattern through a motion in limine.

Even so, Dryshod's arguments fall short. Dryshod argues that Haas cannot use the mini pattern to establish infringement at trial because Haas does not have a copyright for the mini pattern and cannot "alter the scale of the copyrighted pattern" it does have to establish infringement. (Mot. Limine, Dkt. 229, at 14). In support of this argument, Dryshod relies on *Well-Made Toy*, which Dryshod contends stands for the proposition that the plaintiff in that case "could only compare for infringement purposes its copyrighted 20 inch rag doll to defendant's 48 inch ragdoll, even though plaintiff also had a similar 48 inch ragdoll because the plaintiff's 48 inch doll was never registered with the copyright office." (Mot. Limine, Dkt. 229, at 12). The Court concludes that even if it were bound to follow the reasoning in *Well-Made Toy*, that reasoning would serve no barrier to Haas's use of the mini pattern in this case.

6

*Well-Made Toy* involved a copyright dispute between two doll manufacturers: Well-Made Toy Manufacturing Corporation ("Well-Made") and Goffa International Corporation ("Goffa"). 210 F. Supp. 2d at 153. Well-Made manufactured and sold 20-inch and 48-inch dolls. *Id.* While Well-Made had a copyright for the 20-inch doll, it never registered a copyright for the 48-inch doll, which it created by "enlarging the cloth patterns for the 20-inch [doll] on a photocopier" and "adjusting the enlarged doll's proportions . . . to achieve aesthetic proportionality in the larger doll's features." *Id.* "These adjustments were not mathematically governed by any strict rules of proportionality; artistic discretion was required." *Id.* at 154. In other words, Well-Made's "48-inch figure [was] not an exact replica of the 20-inch figurine, nor [was] it a scale model." *Id.* at 164. As the district court noted, "important changes were made in the proportions of the various parts and their relation to one another." *Id.* These differences included alterations to head size, facial features, the length of the doll's braids, and the doll's shoulder shape. *Id.*

After Goffa started manufacturing a 48-inch rag doll, Well-Made sued Goffa for copyright infringement. *Id.* at 153. The district court concluded that Well-Made could not rely on the similarities between the two 48-inch dolls to show infringement because Well-Made did not have a registered copyright for its 48-inch doll. *Id.* at 167. Dryshod argues that this reasoning should preclude Haas's use of the mini pattern to show infringement because Haas's copyright is limited to the full-size pattern. (Mot. Limine, Dkt. 229, at 12).

Dryshod attempts to place the present case on all fours with *Well-Made Toy*, but the two are distinguishable. In *Well-Made Toy*, Well-Made's 20 and 48-inch dolls differed in more than just scale. 210 F. Supp. 2d at 164 ("The 48 inch figure is not an exact replica of the 20 inch figurine, nor is it a scale model. Important changes were made in the proportions of the various parts and their relation to one another."). When Well-Made created its 48-inch doll, it made various aesthetic tweaks to the 20-inch design to ensure the larger doll's features were appropriately proportioned. *Id.* "[I]f the proportions of [Well-Made's] 48 inch doll were identical to those of the 20 inch work from which it was derived . . . and assuming no other changes," the district

7

court noted that "the copyright (and registration) of the smaller could be assumed to incorporate the larger, at least in the case of dolls." *Id.* at 169. But that was not the case in *Well-Made Toy*: "[T]he increase in size was not based upon a mechanical increase in scale, but on aesthetic choices." *Id.* at 169. Differences beyond scale between Well-Made's 20-inch and 48-inch dolls precluded Well-Made from relying on the similarities between the two 48-inch dolls to show infringement. *Id.*

Here, Haas maintains that "the only difference between Haas's full size pattern and its mini pattern, is a reduction in size of approximately 50%." (Resp. Mot. Exclude, Dkt. 171-1, at 12; *see also* Resp., Dkt. 221-5, at 15). To the extent Dryshod objects to the use of the mini pattern because it differs "in scale from the pattern that was registered" with the Copyright Office, the Court finds this objection unpersuasive. (Mot. Limine, Dkt. 229, at 13; *see also id.* (highlighting the importance of scale when dealing with cases that address similar but subtly distinct patterns)). A mere difference in scale does not warrant the mini pattern's exclusion. *Well-Made Toy*, 210 F.Supp.2d at 169.

Dryshod also argues, for the first time in its reply brief, that Haas's mini pattern "as placed in repeat on fabric, is a derivative work" and "dispute[s] that Haas's mini [pattern] is 'identical in all respects to the full size pattern' other than scale." (Reply, Dkt, 230, at 10 (citing Haas Resp., Dkt. 221-5, at 15)). In support, Dryshod contends the mini pattern's "color scheme is different and the pattern gives a snakelike impression that is not present in the full size pattern." (*Id.*).

Excluding the use of the mini pattern, now, on the basis of any alleged color alterations, would be premature. Dryshod may reurge these arguments at trial should Haas move to admit the mini pattern. At that time, the Court will have the benefit of examining the alleged differences between the registered pattern and the mini pattern in person.

Finally, Dryshod argues that Haas "failed to produce any details about the 'mini pattern' during discovery" and only obtained a sample fabric containing the mini pattern after the Court

ordered its production in response to Dryshod's motion to compel. (Order, Dkt. 16). But as Judge Lane stated in his Order, Haas "has shown that it was not negligent or acting in bad faith in obtaining the new certified copy of the NEW BREAK-UP pattern." (Order, Dkt. 220, at 9). And, to the extent Dryshod complains of prejudice, it has not articulated how it has been prejudiced or what the Court could do—aside from excluding the mini pattern entirely—to alleviate this prejudice. (*Id.*). Moreover, any prejudice that Dryshod may have suffered from Haas's late production of the mini pattern has likely been alleviated by the 6-month continuance of the original trial setting in this case. (*See* Order, Dkt. 234 (resetting trial given the exigencies of the Court's criminal docket); *see also* Order, Dkt. 241(vacating trial setting in light of the COVID-19 pandemic)). Accordingly, Dryshod's motion to exclude the mini pattern is **DENIED** without prejudice to reurging it at trial.

## IV. CONCLUSION

For the reasons stated, Dryshod's motions in limine, (Dkt. 229), are **DENIED**.

**SIGNED** on September 8, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE