**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| HAAS OUTDOORS, INC. | § | |
| | § | |
| Plaintiff, | § | C.A. NO. 1:18-cv-00978-RP |
| | § | [LEAD CASE] |
| v. | § | |
| | § | |
| DRYSHOD INTERNATIONAL, LLC, | § | |
| AND JAMES K. DONOHUE | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| DRYSHOD INTERNATIONAL, LLC, | § | |
| AND JAMES K. DONOHUE | § | C.A. NO. 1:18-cv-00596-RP |
| | § | [CONSOLIDATED] |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| HAAS OUTDOORS, INC., | § | |
| | § | |
| Defendant. | § | |

<u>**PLAINTIFF'S NOTICE TO THE COURT**</u>


# EXHIBIT E


# Plaintiff's Proposed Findings of Fact and Conclusions of Law

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| HAAS OUTDOORS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-cv-00978-RP |
| | § | |
| DRYSHOD INTERNATIONAL, LLC, | § | |
| AND JAMES K. DONOHUE | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| DRYSHOD INTERNATIONAL, LLC, | § | |
| AND JAMES K. DONOHUE | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:18-cv-00596-RP |
| | § | (consolidated) |
| HAAS OUTDOORS, INC., | § | |
| TOXEY HAAS and WILLIAM SUGG | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF HAAS OUTDOORS, INC.'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Hass Outdoors, Inc. ("Haas Outdoors") files this, its Proposed Findings of Fact and Conclusions of Law pursuant to Local Rule CV-16(c)(8).

**FINDINGS OF FACT**

1.      This is a copyright and trademark infringement case involving camouflage patterns. Haas designs, manufactures, and licenses camouflage patterns for use in camouflage boot, clothing, related accessories, and other goods.

2.      Plaintiff Haas Outdoors is a corporation duly organized and existing under the laws of the State of Mississippi and has its principle place of business in West Point, Mississippi. Accordingly, Haas Outdoors is a citizen of Mississippi.

3.      Defendant Dryshod International, LLC is a Texas corporation with its principle place of business in Austin, Texas. Dryshod's sole members are James K. Donohue and his wife, Maureen Donohue, both of whom are citizens of Texas. Accordingly, Dryshod is a citizen of Texas.

4.      Defendant James K. Donohue is an adult resident citizen of the State of Texas.

5.      This is an action for trademark infringement arising under 15 U.S.C. § 1114, unfair competition arising under 15 U.S.C. § 1125(a), copyright infringement in violation of 15 U.S.C. § 501, and common law trademark infringement in violation of state law.  This Court also has personal jurisdiction over the Defendants and venue is also proper in this Court. Subject Matter Jurisdiction is based on 28 U.S.C. § 1338 and pendent jurisdiction. The Court also has diversity jurisdiction.

6.      Since 1986, Haas has manufactured—and licensed for manufacture by third parties—camouflage patterns, camouflage clothing, and accessories under the trademark MOSSY OAK.  Haas also has a number of other registered marks related to its series of copyrighted BREAK-UP patterns, including BREAK-UP, NEW BREAK-UP, BREAK-UP INFINITY, and BREAK-UP COUNTRY.

7.      These marks have been widely advertised, and products have been extensively offered under the marks, throughout the United States and foreign countries.

8.      Haas owns the following registered trademarks for MOSSY OAK and for BREAK-UP:

| MARK | REGISTRATION NO. |
|---|---|
| MOSSY OAK® | 1,525,739 |
| MOSSY OAK BRAND CAMO® (and design) | 2,227,642 |
| MOSSY OAK® | 2,003,245 |
| MOSSY OAK® | 4,632,533 |
| MOSSY OAK® (and design) | 5,171,334 |
| BREAK UP® | 2,109,659 |
| NEW BREAK UP® | 2,686,006 |
| BREAK-UP INFINITY® | 3,908,228 |
| BREAK-UP COUNTRY® | 4,740,743 |
| BREAK-UP COUNTRY® (and design) | 4,749,605 |

9.     The marks have become, through widespread and favorable public acceptance and recognition, distinctive marks and assets of substantial value as a symbol of Haas Outdoors, its quality products and its good will.

10.     Haas Outdoors registered its NEW BREAK-UP pattern with the United States Copyright Office on December 21, 2001, which was before or within five years after first publication, under Registration No. VAu 542-518. For the last several decades, Haas Outdoors has referred to the NEW BREAK-UP pattern as "BREAK-UP."

11.     Haas Outdoors's NEW BREAK-UP pattern is one of the most popular and best-selling camouflage patterns in the history of the camouflage industry.

12.      Haas Outdoors licenses its registered marks and camouflage patterns, including the NEW BREAK-UP pattern, to hundreds of licensees throughout the United States. The public, likewise, has come to identify these marks with Haas Outdoors' products.

13.      Earlier in his career, Defendant James K. Donohue ("Donohue") founded a boot manufacturing company, Muck Boot Company ("Muck Boot"), that licensed Haas Outdoors's MOSSY OAK patterns, including its NEW BREAK-UP pattern.  While president of Muck Boot, Donohue personally communicated with Haas Outdoors employees and requested samples of the MOSSY OAK patterns.

14.      During his tenure at Muck Boot, Donohue set up distributor groups to sell his Muck Boot products. Those products included MOSSY OAK branded products bearing the MOSSY OAK and BREAK-UP marks.

15.      Donohue sold Muck Boot in 2004, but when Muck Boot decided to take its distribution in house in 2017, two of those former Muck Boot distributors—Team J Sales & Marketing, Inc. ("Team J") and Co-Operative Feed Dealers, Inc. ("CFD") (collectively, "the Distributors")—approached Donohue about creating a new set of boot products.  Donohue accepted the offer and selected the name DRYSHOD as the brand name of the new product line.

16.      The Distributors asked that Dryshod use Mossy Oak products on all three of the introductory boot models.  Donohue assured them that Dryshod would "only use genuine license [sic] camo patterns from Haas/Mossy Oak and Real Tree."

17.      In April 2017, Donohue contacted Haas Outdoors representatives about obtaining a MOSSY OAK license and filled out a licensing application.  He specifically asked for "clearance for temporary use" of the Mossy Oak pattern on "look-see development samples."  Donohue told

Haas Outdoors that "[t]he samples would be used only for photo-communications with CFD management and would not be used at all for sales or marketing purposes."

18.     At that time, he stated his current interest in the Mossy Oak pattern was "to have the ability to use the authentic patterns so we can select best colors and sizing for decorating the boots with logos or screen-printed elements."

19.     In one of these initial emails, Donohue wrote "I can assure you, if all goes as planned, we will be using a lot of Mossy Oak products and materials on DRYSHOD-brand outdoor products." Haas Outdoors did not follow up with Donohue about this initial exchange or on Donohue's initial April 17, 2017, licensing application.

20.     Prior to creating the infringing camouflage pattern, Donohue picked the name MOBU for his new line of camouflage boots. Early on, one of the Distributors when providing feedback commented on the name, assuming MOBU stood for "Mossy Oak Break-Up." ("MOBU meaning Mossy Oak Break-Up?").

21.     The following month, Donohue and the Distributors began to rethink the costs associated with licensing existing camouflage brands for his new boot line. Donohue informed the Distributors that "[w]e will use our own camo print to avoid fees and add-on costs from branded camo suppliers."[1] Even so, Donohue formed a plan to try to keep the same name he had intended to use for Dryshod boots bearing Haas Outdoors's camouflage patterns.

22.     Specifically, Donohue wrote to the Distributors and other Dryshod employees: "I have some issues with Mossy Oak regarding their licensing fees, costs and restrictions on using a third party to apply the Hydrokote. If we can do our own camo print, it will still be referred to as

---

[1] For the sake of clarity, Donohue and Dryshod's infringing camouflage pattern in hereinafter referred to as the "DS" pattern.

MOBU, which stands for "My Own Break-Up."  Unbeknownst to Haas Outdoors, Donohue and

Dryshod used MOSSY OAK BREAK-UP patterns to create samples to show to the distributors

and potential customers without permission from Haas Outdoors at that time.  In fact, Dryshod and

Donohue misrepresented to Haas Outdoors that Dryshod was using True Timber patterns for its

samples.

23.     Around this same time, Donohue hired an artist, Scott Hewett, ("Hewett") to assist

in designing the Dryshod camouflage pattern.  Donohue emailed Hewett during the design process

and stated:

> In looking over the trademarks for Mossy Oak patterns, I found they
> have attempted to include certain leaf types as trademark elements.
> Specifically maple leaves and leaves with rounded edges. I'm not
> sure if they are actually getting away with that but it is easy to get
> around by using a leaf style not covered in the language of their
> trademarks. The easiest way around it is to use a leaf that is not
> maple and with predominantly pointed tips. My choice would be the
> Spanish Oak or a derivative.

Later, in discussing Hewett's preliminary drawings, Donohue noted that Hewett's drawings

"looked very nice but [were] not as detailed as the prints from Mossy Oak."

24.     Shortly after—and with licensing talks with Haas Outdoors dormant—Donohue

emailed his distributors about the possibility of using True Timber's camouflage pattern instead.

In assessing this option, Donohue noted "[t]he downside is, the material would not be Mossy Oak

or 'My Own Breakup' so, the MOBU name would be in jeopardy. With MOBU, it might look like

we are trying to pass off True Timber as Mossy Oak. That wouldn't make anyone happy."

25.     Still having heard nothing back from Haas Outdoors about his initial April 2017

licensing application, Donohue followed up with Haas Outdoors representatives, again expressing

interest in licensing the Mossy Oak camouflage pattern for his product line.  In that follow-up

email, Donohue compared the Mossy Oak pattern with competitor True Timber's camouflage

pattern and noted: "True Timber is an adequate brand but I feel strongly that the new [Dryshod] hunting models will have a better chance of achieving mass appeal if we use the Mossy Oak patterns on the boots."

26.     After reinitiating contact with Haas Outdoors, Dryshod requested permission to use "300 [yards] of Mossy Oak breakup just collecting dust in [the materials warehouse]" to make samples for his new boot line.  A Haas Outdoors representative responded "[i]f this is unused fabric that would otherwise be disposed of and not currently in use for other Licensees, then they are approved to proceed. This would be a one-time approval as we understand this is a time sensitive matter."

27.     In actuality, Donohue already had arranged for samples to be made using the MOSSY OAK NEW BREAK-UP pattern.  Donohue had instructed Pepei, a Dryshod employee responsible for interfacing with the textile factory in China, to outfit MOBU sample boots with the MOSSY OAK pattern. ("[I]t is okay to make the MOBU samples with Mossy Oak, if necessary."); ("I decided to specify Mossy Oak on just one boot sample."); ("Ms. Zhang used the Mossy Oak Break-Up on all of the mens and womens premium boots and only used DIY camo on two kids boots.").

28.     Meanwhile, Hewett continued to tweak the commissioned camouflage painting in accordance with Donohue's feedback. At some point though, Donohue decided to pursue a "backup option."  According to Donohue, he set up "Live Oak bark, Live Oak leaves, Spanish Oak leaves, Texas Ball moss, Live Oak sprigs and a few sprigs of Mountain Laurel" in his yard and took a picture of the arrangement with his iPhone.  He then sent this photo to a graphics technician at a textile supplier in Dongguan, China, to prepare a camouflage pattern based on the photo.

29.     In doing so, he instructed the graphics technician to "make modifications, such as color correction, scaling, and stepping and repeating the photograph to turn it into a pattern suitable to pass as camouflage."  During the design process, the "graphics technician also manipulated a limited number of elements found within the photograph to cover or hide edges of repeated frames."

30.     Donohue "continued to have issues with his pattern" and highlights an email Donohue sent to Pepei stating "I am comparing the image size and quality to the Mossy Oak camo and find that the image size and print quality of ours is very weak compared to the Mossy Oak."

31.     All of the modifications and enhancements noted above ultimately brought the Dryshod pattern closer and closer to NEW BREAK-UP pattern.

32.     In a September 2017 email, Donohue "expressed dismay to his Chinese employee that on the most recent sample boots, the factory had affixed a MOBU pattern [(DS Pattern)] on part of the boot and Mossy Oak Break-Up on another part of the same boot."  In that email, Donohue wrote, "what I immediately noticed is, the lateral side of the bootie was made with the correct MOBU laminated material but the medial side was Mossy Oak material . . . . I have no idea why or how someone could make such a mistake but someone was not paying attention."  This email is strong evidence that [t]he two patterns were so similar that even manufacturers of the boots could not tell them apart.

33.     Donohue then set out to design a tag for his boots to explain the term MOBU. The tag read as follows:

> Rather than get caught up in today's camo wars, we decided to make our own. It's called MOBU-short for "My Own Break-Up." Now those licensing fees can go into providing additional features like HYDROKOTE hydrophobic water repellant and 4-way stretch uppers. Get more with MOBU!

34.     In explaining the thought process behind the tag, Donohue stated that he "really struggled" because he "thought there was a chance people would thing [sic] we were being cheap or weasely." Ultimately, he decided to include the explanation for MOBU on the tag and "cast it as an acronym for My Own Break-Up." He further clarified that he "did this just in case Mossy Oak took exception to the MOBU name as a way to confuse the public into thinking that MOBU was short for Mossy Oak Break-Up."

35.     After the tags had been placed on the Dryshod boots, a distributor informed Donohue that "Break-Up" was trademarked. Donohue acknowledged that Haas Outdoors had trademarked "Break-Up," and, as a result, Haas Outdoors "might take exception to including the word 'break-up' in the explanation on the back of the hang tag." He instructed his team to remove the small MOBU tags from the boots and noted "I probably made a mistake by thinking we needed to provide an explanation for the MOBU name. If we treat is [sic] as just a name with no printed explanation, then there is no chance of infringement."

36.     Haas Outdoors sent Donohue a licensing agreement for his signature in July 2017. But by August, Donohue told Haas Outdoors he was "in a holding pattern on which camo brand and patterns [Dryshod] would move forward with." He further expressed concerns to Haas Outdoors representatives about "Mossy Oak charging a royalty fee on a per unit basis and the monthly accounting" that Dryshod would have to submit "to be in compliance with the Mossy Oak licensing agreement."

37.     By December, Donohue informed Haas Outdoors that he had decided to "pass on adopting Mossy Oak (or any other licensed camo brand) for the initial DRYSHOD product line."

38.     In accordance with the Conclusions of Law herein, the Court makes the following specific findings of fact:

39.     Defendants had access to Haas Outdoors's NEW BREAK-UP pattern.

40.     Defendants' DS camouflage pattern is probatively similar to Haas Outdoors's NEW BREAK-UP pattern.

41.     Defendants' DS camouflage pattern is substantially similar to Haas Outdoors's NEW BREAK-UP pattern.

42.     Defendants have failed to meet their burden of proof by a preponderance of the evidence that they created their camouflage pattern independently without copying Haas Outdoors's NEW BREAK-UP pattern.

43.     By a preponderance of the evidence, Defendants have infringed upon Haas Outdoors's copyright for NEW BREAK-UP.

44.     Haas Outdoors is entitled to actual damages for the infringement of the NEW BREAK-UP copyright, in the form of a reasonable royalty at the rate of $1.50 per pair of adult boots and $1.00 per pair of youth boots, in the sum of $196,383.00 for the 109,114 adult boots as of August 31, 2021 and for the 32,712 youth boots as of August 31, 2021.[2]

45.     Additionally, Haas Outdoors is entitled to Defendants' gross revenue attributable to the infringement of the NEW BREAK-UP copyright in the amount of $451,622.00.

46.     In the alternative, to the extent greater than the damages awarded to Haas Outdoors for a reasonable royalty rate and/or for Defendants' revenue attributable to the infringement, the Court awards statutory damages in the amount of $150,000.

47.     Haas Outdoors is entitled to interest on the aforementioned damages at the Wall Street Journal prime rate through the date of trial, an amount to be finally calculated after trial.

---

[2] This number is subject to increase, upon application by Haas Outdoors, for any infringing boots after August 31, 2021.

48.     The Defendants' use of MOBU is likely to cause mistake or confusion as to Haas Outdoors' registered MOSSY OAK and BREAK-UP trademarks, or likely to deceive as to some affiliation, connection or association of Defendants with Haas Outdoors, or as to the origin, sponsorship or approval of Defendants' goods by Haas Outdoors in light of its registered trademarks.

49.     MOBU is an acronym for MOSSY OAK BREAK-UP commonly used by Haas Outdoors and the consuming public to refer to MOSSY OAK BREAK-UP.

50.     Haas Outdoors has valid rights in the mark MOBU.

51.     Haas Outdoors's mark, MOBU, is inherently distinctive and/or has acquired distinctiveness solely to indicate that Haas Outdoors is a source of goods.

52.     Defendants' use of MOBU is likely to cause mistake or confusion, or likely to deceive as to some affiliation, connection, association of Defendants with Haas Outdoors's unregistered MOBU mark, or as to the origin, sponsorship, or approval of Defendants' boots by Haas Outdoors based upon its MOBU mark.

53.     Defendants registered the MOBU mark with the U.S. Patent & Trademark Office after Haas Outdoors's placed them on express notice of infringement by suing them.

54.     Haas Outdoors is entitled to actual damages for trademark infringement in the form of a reasonable royalty at the rate of $1.50 per pair for the 8,196 adult boots bearing the MOBU mark and $1.00 per pair for the 756 youth boots bearing the MOBU mark. Because the boots bearing the infringing MOBU mark also bear the infringing DS camo pattern, these 8,196 adult boots and 756 youth boots are included in the totals above at Paragraph 44, but the separate total would otherwise be $13,050.

55.     Additionally, Haas Outdoors is entitled to Defendants' gross revenue attributable to Defendants' trademark infringement of Haas Outdoors's registered and unregistered marks in the amount of $25,224.00.

56.     Defendants have willfully infringed Haas Outdoors's trademarks, entitling Haas to enhanced damages of the aforementioned paragraph, for a total of $75,672.00.

57.     The Court finds that Haas Outdoors is entitled to its reasonable attorney fees and costs, in an amount to be requested by Haas Outdoors within 30 days of entry of these findings and reviewed and approved by the Court.

58.     Haas Outdoors is entitled to an Order directing the United States Patent and Trademark Office to refuse registration of Defendants' trademark application number 87,778,784 for the MOBU mark.

59.     Haas Outdoors is entitled to a permanent injunction prohibiting Defendants, their agents, partners, affiliates or any person in active concert with them from any use of the MOBU, MOSSY OAK or BREAK-UP marks, or any mark confusingly similar to the MOBU, MOSSY OAK or BREAK-UP marks.

60.     Haas Outdoors is entitled to a similar injunction prohibiting Defendants, their agents, partners, affiliates of any person in active concert with them from the use of Defendants' pattern the subject of this civil action, or any pattern substantially similar to Haas Outdoors's NEW BREAK-UP pattern.

## CONCLUSIONS OF LAW

### 1. Copyright Infringement

61.     Among the rights of a copyright owner are the right to make copies, the right to prepare derivative works and the right to distribute copies of the work to the public. 17 U.S.C. § 106.

62.     In order to prove infringement, a plaintiff must prove by a preponderance of the evidence that defendants have violated one or more of these exclusive rights.  To prove copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 549 (5th Cir. 2015) (quoting *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007)).

63.     The existence of a Certificate of Copyright Registration made before or within five years after first publication of the work is prima facie evidence of the validity of the copyright. *See* 17 U.S.C. § 410(c); *Nola Spice Designs, L.L.C.*, 783 F.3d at 549.

64.     Factual copying can be proven by either direct or circumstantial evidence. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). Because direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 783 (S.D. Tex. 2013).

65.     "To establish access, a plaintiff must prove that 'the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work' before creating the infringing work." *Armour*, 512 F.3d at 152–53.

66.     To show probative similarity, a plaintiff must show "the works contain similarities that are probative of copying." *Id.* A factfinder could find that two works are probatively similar

"if there are any similarities between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently in the two works and that therefore might suggest that the defendant copied part of the plaintiff's work." *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 370 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). *Id.* at 147. To show probative similarity, a plaintiff must show "the works contain similarities that are probative of copying." *Id.*

67.     "If a plaintiff establishes an inference of factual copying (by showing access and probative similarity), the defendant can rebut that inference, and thus escape liability for infringement, if he can prove that he independently created the work." *Engenium Sols.*, 924 F. Supp. 2d at 783 (citing *Positive Black Talk Inc.*, 394 F.3d at 368). This requires a showing by a defendant that the plaintiff's work at issue was not used in the creation of the defendant's work. *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1375 (5th Cir. 1981) (noting defendant bears the burden to demonstrate creation of his work "without reference to the prior work"); *see also Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 830 (11th Cir. 1982) (affirming rejection of independent creation defense where defendant failed to overcome the presumption of copying resulting from plaintiff's proof of access and substantial similarity). If the defendant offers evidence of independent creation, the burden shifts to the plaintiff to prove "that the defendant in fact copied the protected material." *Miller*, 650 F.2d at 1375.

68.     Not all copying is legally actionable. *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001). "If a plaintiff has established factual copying (and the defendant does not establish independent creation), the plaintiff must also prove that the copyrighted work and the allegedly infringing work are substantially similar." *Huffman v. Burnt Puppy Music*, No. 6:16-CV-355-RP, 2017 WL 11046666, at *2 (W.D. Tex. Feb. 1, 2017).

69.     To assess substantial similarity, "a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Id*. (quoting *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997)). This determination is an objective one from the standpoint of an "ordinary observer": would a layman detect piracy "without any aid or suggestion or critical analysis by others"? *Peel & Co.*, 238 F.3d at 398; *see also id*. (citation and quotation marks omitted) ("The reaction of the public to the matter should be spontaneous and immediate.").

70.     Substantiality is determined by considering both the amount, or quantity, and the significance, or quality, of the matter copied by Defendants. *Nola Spice Designs, L.L.C.*, 783 F.3d at 550. One should not find infringement if only a small amount of relatively unimportant matter has been copied.  However, the significance of the copied matter to Haas Outdoors' work may outweigh the fact that not a large amount of material has been copied.  *Eng'g Dynamics, Inc.*, 26 F.3d at 1343 (noting that the goal of the comparison step is to "determine whether the defendants have misappropriated substantial elements of the plaintiff's" work (citation omitted)). Because the organization of the matter in a work may itself be protected, *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991), in determining whether substantial protected matter has been copied, one may take into account similarities or dissimilarities in the organization of matter that has been copied. *See L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) (holding that while a floral pattern contains natural elements that are not protectable, "the original selection, coordination, and arrangement of such elements is protectible" and entitled to broad copyright protection and the substantial similarity test applies because there is a "wide range of expression for selecting, coordinating, and arranging floral elements in stylized fabric designs.").

71.     When considering similarity, one's primary focus should be on the points of similarity rather than the points of dissimilarity.  *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 565 (1985) ("[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." (citation and quotation marks omitted)).  One's reaction as to whether or not works are substantially similar should be spontaneous and immediate.  *Peel & Co.*, 238 F.3d at 398.  Substantiality is not determined simply by the raw percentage of Haas Outdoors's work that Dryshod International and James Donohue copied.  Similarly, substantiality is not determined by the percentage of Dryshod International and James Donohue's work that they contend was *not* copied from has Outdoors' work.  What matters is "consideration of the importance of the copied protectable elements to the copyrighted work as a whole" *Nola Spice Designs, L.L.C.*, 783 F.3d at 550 (citation omitted).

72.     As explained above in the specific findings, the Court finds that Haas Outdoors has demonstrated both probative and substantial similarity of Defendants' DS pattern to Haas Outdoors's NEW BREAK-UP pattern.  Accordingly, the Court finds that Defendants have infringed Haas Outdoors's copyright in the NEW BREAK-UP pattern.

## 2. Trademark Infringement

73.     A trademark is any word, name, symbol, device, or any combination thereof used by a person to identify and distinguish that person's or company's goods and indicate the source of the goods. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

74.     The first person or company to use a trademark in the marketplace as a source of origin acquires the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace. *See Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985).

75.     In an action for trademark infringement, the owner of a valid mark, whether registered or unregistered, may enforce the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.8 (5th Cir. 2010). The same standards apply to claims of infringement of registered and unregistered marks. *Id.*

76.     Haas contends that Defendants, by using the MOBU mark, have infringed Haas' federally registered MOSSY OAK and BREAK-UP trademarks. Haas Outdoors also contends that Defendants, by using the MOBU mark, have infringed Haas Outdoors's unregistered MOBU mark, which is an abbreviation or acronym for Mossy Oak Break-Up.  Haas Outdoors's claims for trademark infringement of registered and unregistered marks arise under federal law and state law (Mississippi and Texas). For all of these claims, Haas must show, by a preponderance of the evidence, that it is the owner of a valid trademark(s) and that Defendants infringed those trademarks.

77.     To prevail on a trademark infringement claim, a plaintiff must show (1) ownership in a legally protectable mark, and (2) infringement resulting from a likelihood of confusion. *Bd. of Supvrs. for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008).

78.     To be legally protectable, a mark must be either (a) inherently distinctive or (b) have acquired distinctiveness through secondary meaning. In assessing the distinctiveness of a word mark, the Fifth Circuit relies on the categories set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *See Nola Spice Designs, L.L.C.*, 783 F.3d at 537 (noting that the Fifth Circuit relies on the spectrum set forth in *Abercrombie* to determine the distinctiveness of a word mark).

79.     Assigning a word mark to a category is important because the assignment "determines whether or not, or in what circumstances, the word or phrase is eligible for trademark protection." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990). For example, generic terms are never eligible for trademark protection, while descriptive terms "may only be protected after proof of secondary meaning." *Id.* Meanwhile, suggestive, arbitrary, or fanciful terms "are all protectable without proof of secondary meaning." *Id.* Importantly then, proof of secondary meaning is not required if the mark is at least suggestive. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009).

80.     An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate. A certificate of registration issued by the U.S. Patent and Trademark Office creates a presumption that the mark is valid and owned by the holder of the certificate. *Amazing Spaces, Inc.*, 608 F.3d 225, 237 (5th Cir. 2010); 15 U.S.C. § 1057(b).

81.     Haas Outdoors claims trademark rights in the unregistered mark MOBU as an abbreviation, acronym, or nickname for its registered marks MOSSY OAK and BREAK-UP. Haas Outdoors may obtain trademark rights through actual use in commerce of any word, name, symbol or device, or combination thereof, to identify its goods. *See Smack Apparel Co.*, 550 F.3d at 475. In determining whether the use in commerce is sufficient to create trademark rights in Haas Outdoors, courts often consider the totality of the circumstances. *E.g.* , *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). Use is sufficient to establish trademark rights if the use is public enough so that it identifies or distinguishes the marked goods in an appropriate segment of the public as those of the person using the mark. *See Blue Bell, Inc. v.*

*Farah Mfg. Co.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975). If the mark is used in a genuine commercial transaction, and if the use is consistent and continuous, this is sufficient to establish trademark rights. *See id.*

82.     Haas Outdoors also may obtain trademark rights through the use by the public of an abbreviated term or nickname to identify a particular Haas Outdoors product. As several commentators have observed, "'Americans are prone to abbreviate recognized trademarks and to use nicknames. Such abbreviations and nicknames are just as entitled to legal protection as the original full trademark.'" *The Saul Zaentz Co. d/b/a Tolkien Enters. v. Bumb,* 2010 TTAB LEXIS 268, at *13-15 (TTAB 2010); *see also Nat'l Cable TV Ass'n v. Am. Cinema Eds., Inc.* 937 F.2d 1572, 1577-78 (Fed. Cir. 1991); *Volkswagenwerk Ag v. Hoffman*, 489 F. Supp. 678, 681 (D.S.C. 1980) (citing *Coca-Cola Co. v. Koke Co. of America*, 254 U.S. 143 (1920); *Howard Johnson Co. v. Ho-Jo Campsites, Inc.*, 273 F. Supp. 447 (M.D. Fla. 1967)); *Volkswagon Werk Aktiengesellschaft v. Thermo-Chem Corp.*, 1975 TTAB LEXIS 30, at *5 (TTAB 1975); *McCarthy on Trademarks*, 5th Ed. § 18.45.50. Haas Outdoors also may obtain trademark rights through the use of an abbreviated term or nickname by its licensees. In considering whether Haas Outdoors has trademark rights in, and can protect MOBU, the Court may also consider whether Haas Outdoors has adopted or allowed the public to use the abbreviation, acronym, or nickname MOBU without protest.

83.     Assuming ownership of Plaintiffs' rights in the MOBU mark, the Court must determine whether the mark is valid.  As discussed above, the first step in determining whether Haas Outdoors's MOBU mark is a valid trademark is assessing the mark's distinctiveness. Distinctiveness refers to how strongly the mark identifies a product with Haas Outdoors and is an important factor to consider in assessing whether the mark is valid. To determine if Haas Outdoors

has met its burden of showing that MOBU is a valid trademark, the Court must first classify it on the spectrum of trademark distinctiveness. Trademark law provides great protection to distinctive trademarks. On the other hand, trademarks that are not as distinctive receive less protection, and trademarks that are not distinctive are not entitled to any trademark protection.

84.     A *generic* term "identifies a genus or class of things or services, of which the particular item in question is merely a member." *Xtreme Lashes, LLC*, 576 F.3d at 232. A *descriptive* term, on the other hand, "identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 539 (5th Cir. 2015). Meanwhile, a *suggestive* term "suggests rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of goods and services." *Union Nat. Bank of Texas, Laredo, Tex.*, 909 F.2d at 845. Finally, arbitrary and fanciful terms "are either coined words or words which are not suggestive of the product or service." *Id.* Arbitrary terms refer "to ordinary words which do not suggest or describe the services involved." *Id.*

85.     In determining whether a mark is descriptive or suggestive, the Fifth Circuit uses the "imagination test," which "seeks to measure the relationship between the actual words of the mark and the product to which they are applied." *Nola Spice Designs*, 783 F.3d at 539. "If a word requires imagination to apply it to the product or service in question, it tends to show that the term as used is suggestive. On the other hand, if the word conveys information about the product, it is descriptive." *Id.*

86.     When categorizing a mark, the court "must examine the context in which the term is used." *Id.* at 537. Relevant questions include "how the term is used with other words, the products

or services to which it is applied, and the audience to which the relevant produce or service is directed." *Id.*

87.     The Supreme Court has expressly approved application of the *Abercrombie* test to determine the distinctiveness of common-law word marks: "In the context of word marks, courts have applied the now-classic test originally formulated by Judge Friendly, in which word marks that are "arbitrary ("Camel" cigarettes), "fanciful" ("Kodak" film), or suggestive ("Tide" laundry detergent) are held to be inherently distinctive." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210 (2000) (citing *Abercrombie*, 537 F.2d at 10-11).

88.     The likelihood of confusion test applies to claims for both trademark infringement (registered and unregistered mark) and for claims of false designation of origin. *See Two Pesos, Inc.*, 505 U.S. at 780-81 (applying the likelihood-of-confusion standard to all three claims).

89.     "Likelihood of confusion means more than a mere possibility; the plaintiff must demonstrate a probability of confusion."  *Xtreme Lashes, LLC*, 576 F.3d at 226 (citing *Smack Apparel Co.*, 550 F.3d at 478). Courts employ a non-exhaustive list of eight "digits of confusion" to evaluate whether there is a likelihood of confusion:  (1) strength of the plaintiff's mark, (2) similarity the defendant's use to the plaintiff's mark, (3) similarity of the products, (4) identity of the retail outlets and purchasers, (5) identity of the advertising media used, (6) intent to infringe, (7) evidence of actual confusion, and (8) degree care exercised by potential consumers. *Id.* No one digit is dispositive and the analysis of the digits, including whether to consider other evidence, varies based on the context of the case.  *Id.* Under this analysis, courts must be mindful of the relevant marketplace and market conditions a potential consumer is likely to encounter. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 197 (5th Cir. 1998).

90.     It is not necessary that the mark used by Dryshod International and James Donohue be an exact copy of Haas Outdoors's mark. Rather, Haas Outdoors must demonstrate that, when viewed in its entirety, Dryshod International and James Donohue's use of their mark is likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public as to the source, origin, sponsorship or approval of the product or service in question, or as to affiliation, connection or sponsorship.

91.     The first digit considers the strength of the plaintiff's mark to determine how much protection should be afforded to the mark by evaluating the mark's position on the spectrum of distinctiveness and the mark's standing in the marketplace. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008). On the spectrum of distinctiveness, arbitrary and fanciful marks are the strongest marks while descriptive marks are weak and generic marks are entitled to no protection. *Two Pesos, Inc.*, 505 U.S. at 768.

92.     Under the second digit, similarity between the defendant's use and the plaintiff's mark, courts "compare the marks' appearance, sound, and meaning" to determine the extent to which the marks are similar and whether "purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enters., Inc.*, 141 F.3d at 201 (citations and quotations omitted).

93.     Generally under the third digit, "[t]he greater the similarity between products and services, the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exch.*, 628 F.2d 500, 505-06 (5th Cir. 1980). The same is true for the fourth digit (retail outlets for and the predominant consumers) and the fifth digit (advertising). *Id.*

94.     Under the sixth digit, courts consider whether the defendant intended to copy the plaintiff's mark or benefit from the plaintiff's reputation. *Oreck Corp. v. U.S. Floor Sys.*, 803 F.2d

166, 173 (5th Cir. 1986). Evidence of intent is not required, but "[i]f such an intent can be shown, however, it may provide compelling evidence of a likelihood of confusion." *Id.*

95.     Under the seventh digit for actual confusion, "[e]Evidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Smack Apparel Co.*, 550 F.3d at 483. "It is well established, however, that evidence of actual confusion is not necessary for a finding of a likelihood of confusion." *Id.*

96.     Under the eighth digit, courts evaluate the care exercised by potential purchasers. *Id.* Consumer care generally increases when products are expensive and decreases when products are less expensive. *Compare Gruma Corp. v. Mex. Rests., Inc.*, 497 F. App'x 392, 396 (5th Cir. 2012) (finding low degree of care for inexpensive store-bought burritos and casual dining restaurants), *with Oreck Corp.*, 803 F.2d at 173-74 (finding high level of care regarding vacuums costing in excess of a thousand dollars).

97.     As stated above in the specific findings, the Court finds that Haas Outdoors has valid rights in the MOBU mark through its own use and the use by the public and Haas Outdoors' licensees of MOBU as an acronym for the registered MOSSY OAK and BREAK UP marks. The Court finds this mark is inherently distinctive under the *Abercrombie* test. The Court also finds, after weighing the relevant digits of confusion, that there is a likelihood of confusion between Haas Outdoors's MOBU mark and Defendants' use of the same mark. Accordingly, the Court finds that Defendants have infringed Haas Outdoors's trademark rights.

### 3. Damages

98.     Upon a finding of copyright infringement then Haas Outdoors may recover either: (1) Haas Outdoors's actual damages, plus Dryshod International and James Donohue's profits

attributable to infringement; or, at Haas Outdoors's option, (2) Statutory damages. 17 U.S.C. § 504(a).

99.     Haas Outdoors is entitled to recover its actual damages suffered as a result of the infringement.   "Actual damages" means the amount of money adequate to compensate Haas Outdoors for any losses caused by the infringement. 17 U.S.C. § 504(b). In this case, Haas Outdoors claims its actual damages are measured by a reasonable or hypothetical license fee that Dryshod International and James Donohue would have or should have paid for the use of the infringed work. In determining this amount, the Court may consider the fair market value of the work Haas Outdoors claims was infringed. Instances of past licensing by Haas Outdoors can serve as a benchmark for measuring the fair market value of a reasonable license fee for the infringed work. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 161 (2d Cir. 2001); *Durant v. Greenfield & Fortenberry, LLC*, Civ. Action No. 1:16-CV-965-RP, 2018 WL 3155822, 2018 U.S. Dist. LEXIS 108069, *7-14 (W.D. Tex. June 28, 2018); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 359 (S.D.N.Y. 2003). Haas Outdoors bears the burden of showing the fair market value of the work infringed by a preponderance of the evidence.

100.     In addition to actual damages, Haas also claims that it is entitled to Defendants' profits that are attributable to the infringement, to the extent not already taken into account in computing Haas Outdoors actual damages. 17 U.S.C. § 504(b); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-60 (2d Cir. 2001).

101.     In establishing the amount of Dryshod International and James Donohue's profits, Haas Outdoors is required to present proof only of Dryshod International and James Donohue's gross revenue and that there is some reasonable relationship, either direct or indirect, between those revenues and the infringement. 17 U.S.C. § 504(b). Once these two elements are

established, the burden of proof then shifts to Dryshod International and James Donohue to reduce this amount. Dryshod International and James Donohue must then prove, by a preponderance of evidence, the amount of their deductible expenses, and other elements of profit attributable to factors other than the infringement. *See id.*

102.    "'Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff.'" *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 795 (8th Cir. 2003) (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985)). "'If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.'" *Id.*

103.    If Haas elects a statutory damage award, the Court must determine the amount. "Statutory Damages" are damages that are established by Congress in the Copyright Act. 17 U.S.C. § 504(c). *Feltner v. Columbia Pictures TV*, 523 U.S. 340 (1998). The purpose is to compensate the plaintiff for its losses, and also to penalize the infringer and deter future violations of the copyright laws. *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 514 (1st Cir. 2011). Statutory damages are available without proof of Haas Outdoors's actual damages, Defendants' profits, or other direct economic effects of the infringement. The Court may award up to $150,000 per work infringed where the infringement was willful.

104.    "Under the Copyright Act, a court awarding statutory damages is 'not required to follow any rigid formula,' but 'enjoy[s] wide discretion.'" *Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, No. H-07-0315, 2007 U.S. Dist. LEXIS 68182, 2007 WL 2710479, at *3 (S.D. Tex. Sep. 14, 2007) (quoting *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991)). "To determine where an award should lie on the range of statutory damages, courts consider factors such as: 'the willfulness of the defendant's conduct, the deterrent

effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff.'" *Adobe Sys. v. SKH Sys.*, No. A-17-CA-018-SS, 2017 U.S. Dist. LEXIS 212321, at \*19-20 (W.D. Tex. Dec. 27, 2017) (quoting *Commercial Law League of Am., Inc.*, 2007 WL 2710479, at \*3).

105.    "In the copyright context, the Fifth Circuit held that a 'defendant acts 'willfully' within the meaning of [the statutory damages provision of the Copyright Act] . . . if he knows his actions constitute an infringement; the actions need not have been malicious.'" *Better Keiki, LLC v. MairicoDirect*, No. 4:17-cv-00850, 2018 U.S. Dist. LEXIS 161962, at \*15 (E.D. Tex. Aug. 29, 2018) (quoting *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)).

106.    If successful in proving trademark infringement, Haas Outdoors may recover a reasonable royalty rate for Dryshod International and James Donohue's infringement. 15 U.S.C. § 1117; *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 459-61 (5th Cir. 2017). Haas Outdoors also may recover Dryshod International and James Donohue's profits reasonably related to the infringement. *Streamline Prod. Sys.*, 851 F.3d at 459-61.

107.    To determine a reasonable royalty rate the Court should consider the fair market value of the rights infringed, or, in other words, what a hypothetical license from Haas Outdoors might have charged Dryshod International and James Donohue for the rights infringed. *Id.* This should be an amount that is rationally related to the scope of Dryshod International and James Donohue's infringement. In other words, there must be a correlation between (1) the rights infringed by Dryshod International and James Donohue and (2) the royalty damages awarded to Haas Outdoors. *See id.*

108.     In addition to actual damages, Haas Outdoors is entitled to recover any of Dryshod International and James Donohue's profits that are attributable to the infringement. 15 U.S.C. § 1117; *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1496 (2020) (finding willfulness not required for an award of profits). The Court may not, however, include in any award of Dryshod International and James Donohue's profits any amount that was already included in the amount of Haas Outdoors's reasonable royalty damages. As with copyright infringement, Haas Outdoors need only establish Defendants' gross revenue, while Defendants must demonstrate properly deductible expenses. *Seatrax, Inc. v. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000).

109.     "Courts may enhance damages to 'provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from [the] defendant's conduct.'" *Premier S., LLC v. Premier Roofing LLC*, No. 17-CV-00316-BAJ-EWD, 2019 U.S. Dist. LEXIS 219446, at *4 (M.D. La. Dec. 20, 2019) (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991)). "'An enhancement of damages may be based on a finding of willful infringement.'" *Id.* Courts may also award attorneys' fees in an "exceptional case," which is one where "(1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). "A case is also exceptional when 'the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful.'" *Viahart v. Does*, No. 6:18-CV-604-RWS-KNM, 2021 U.S. Dist. LEXIS 37579, at *18 (E.D. Tex. Jan. 29, 2021) (quoting *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992)).

110.    Finally, a prevailing plaintiff is entitled to recover costs of the action. 15 U.S.C. § 1117(a).

111.    As stated above in the specific findings, the Court finds that Haas Outdoors is entitled to recover aforementioned damages from Dryshod International and James Donohue.

Dated: September 30, 2021

Respectfully submitted,

HAAS OUTDOORS, INC.

By Its Attorneys,
JONES WALKER LLP

By:  _s/ W. Whitaker Rayner_
W. WHITAKER RAYNER

W. WHITAKER RAYNER (MS Bar No. 4666) (*pro hac vice*)
ANDREW S. HARRIS (MS Bar No. 104289) (*pro hac vice*)
JONES WALKER LLP
190 East Capitol Street, Suite 800
Jackson, Mississippi 39201
Tel.: (601) 949-4900; Fax: (601) 949-4804
wrayner@joneswalker.com
aharris@joneswalker.com

KRYSTAL P. SCOTT
Texas Bar # 24056288
JONES WALKER LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Tel.: 713-437-1816; Fax: 713-437-1810
kscott@joneswalker.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document is being

filed electronically via the Court's CM/ECF system.

Dated: September 30, 2021

*s/ W. Whitaker Rayner*
W. WHITAKER RAYNER