**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| HAAS OUTDOORS, INC. | § | |
| | § | |
| Plaintiff, | § | C.A. NO. 1:18-cv-00978-RP |
| | § | [LEAD CASE] |
| v. | § | |
| | § | |
| DRYSHOD INTERNATIONAL, LLC, | § | |
| AND JAMES K. DONOHUE | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| DRYSHOD INTERNATIONAL, LLC, | § | |
| AND JAMES K. DONOHUE | § | C.A. NO. 1:18-cv-00596-RP |
| | § | [CONSOLIDATED] |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| HAAS OUTDOORS, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF HAAS OUTDOORS, INC.'S REVISED PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Hass Outdoors, Inc. ("Haas Outdoors") files this, its Revised Proposed Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1.      This is a copyright and trademark infringement case involving Haas Outdoors's camouflage pattern and its registered and unregistered trademarks. The Court, by separate opinion, is addressing its Findings of Fact and Conclusions of Law as to allegations of copyright infringement. Thus, except for those facts relevant to copyright infringement which likewise are relevant to claims of trademark infringement, these Findings of Fact and Conclusions of Law will

address only facts and issues relating to claims of trademark infringement, unfair competition, and trademark registration cancellation.

2.      The defendant Dryshod International, LLC is a Texas Corporation with its principal place of business in Austin, Texas. Dryshod's sole members are Defendant James K. Donohue and his wife, Maureen Donohue, both of whom are citizens of Texas. Transcript Volume I at 219 (hereinafter "Trans." followed by a roman numeral to indicate the volume number).

3.      Plaintiff Haas Outdoors is a corporation duly organized and existing under the laws of the State of Mississippi, with its principal place of business in West Point, Mississippi. Since 1986, Haas Outdoors has created—and licensed for manufacture by third parties—camouflage patterns, camouflage clothing, and accessories under the trademark MOSSY OAK. Trans. I at 38-39, 42. Haas Outdoors is the owner of Federal Registrations for a number of "MOSSY OAK" marks including MOSSY OAK, MOSSY OAK BRAND CAMO (and design), and three other MOSSY OAK marks. *See* Stipulation (Dkt. #212); Exs. P-96 & P-97. These marks have become assets of substantial value and symbols of Haas Outdoors, its quality products, and its goodwill. Trans. I at 39-40, 42-43. Haas Outdoors also registers and protects its trademarks for specific patterns. Among those are the BREAK-UP family of marks, including BREAK-UP (Ex. P-98), NEW BREAK-UP (Ex. P-101), BREAK-UP INFINITY, BREAK-UP COUNTRY (and design) (Stipulation, Dkt. #212). The BREAK-UP family of patterns is the most popular and best-selling camouflage pattern in the history of Haas Outdoors. Trans. I at 40.

4.      Also at issue is the use in combination of two Haas Outdoors registered trademarks—MOSSY OAK and BREAK-UP—as the phrase and mark: MOSSY OAK BREAK-UP. While this phrase is not registered in its combined form with the United States Patent and Trademark Office ("PTO"), the two components comprising it are separately registered with the

PTO and frequently are combined together in marketing materials. Exs. P-147, P-150, P-158, P-1996, & P-2004. The marks are also used and combined together on Haas Outdoors's BREAK-UP patterns themselves. Exs. P-100 & Ex. P-115; Trans. I at 57-58.

5.      Haas Outdoors licenses its registered marks (including MOSSY OAK and BREAK-UP) and camouflage patterns to almost one thousand licensees throughout the United States. Trans. I at 42. These licensees include such prominent manufacturers as Remington, Browning, UnderArmour, Columbia, and Carhartt, together with "big box" stores such as Bass Pro Shop, Dick's Sporting Goods, Academy Sports, Cabela's, and Walmart, to name a few. Trans. I at 43. One of Defendants' distributors—Co-Operative Feed Dealers, Inc.—has been a licensee of Haas Outdoors. Trans. III at 130.

6.      There is another mark at issue in this litigation: the often-used and widely recognized abbreviation MOBU as a reference to and acronym for the phrase MOSSY OAK BREAK-UP. Haas Outdoors does not have a registration with the PTO for the acronym mark MOBU. Trans. I at 60. This acronym, however, is widely recognized and used by Haas Outdoors in external communications with customers, including "big box" retailers, licensees, and product consumers, all of whom recognize the abbreviation MOBU as a shorthand identifier for the MOSSY OAK BREAK-UP mark and its individual components. Trans. I at 58-61. Indeed, at trial, Haas Outdoors introduced over 350 emails evidencing use by Haas Outdoors and customers of MOBU as a shorthand version of MOSSY OAK BREAK-UP. Exs. P-345 to P-709. This correspondence includes MOBU usage to refer to MOSSY OAK BREAK-UP by or with LaCrosse Boots, Gander Mountain, Rocky Boots, Justin Boots, The Sports Authority, Dick's Sporting Goods, Walmart, Red Wing Shoes, Nikon, UnderArmour, Muck Boots and an Animal Planet television show. Trans. I at 62-77. Exs. P-348, P-351, P-359, P-400, P-403, P-428, P-430, P-443,

P-471, P-475, P-476, P-509, P-519. In addition to the examples specifically highlighted by Haas Outdoors at trial, Appendix A attached hereto further summarizes material examples of usage of MOBU to refer to MOSSY OAK BREAK-UP. Haas Outdoors also introduced at trial a representative sample of internet websites in which third parties used MOBU as an abbreviation for the marks MOSSY OAK BREAK-UP and for the MOSSY OAK BREAK-UP pattern. Trans. II at 262-267; Trans. III at 8-11; Exs. P-1971, P-1972, P-1975, P-1983, P-1988, P-1996, P-2004, & P-2009. The Court also notes that Haas Outdoors has used in its licenses the letters MO to refer to MOSSY OAK and the letters BU to refer to BREAK-UP. *E.g.*, Trans. III at 62; Ex. P-259.[1]

7.      Early in his career, Donohue founded the Muck Boot Company, a boot manufacturer, that licensed Haas Outdoors's MOSSY OAK patterns. Trans. I at 97-98; Ex. P-6. The license agreement between Haas Outdoors and Muck Boot from 2001 specified BREAK-UP as the authorized pattern for Muck Boot's hunting boot. Ex. P-6. Thus, at least as early as 2001, Defendants were aware of MOSSY OAK and the BREAK-UP brand of camouflage.

8.      During his tenure at Muck Boot, Donohue set-up distributor groups to sell his Muck Boot products. Donohue sold the Muck Boot entity in 2004. Ex. P-12. In 2017, after the eventual owner of Muck Boot decided to take product distribution in-house, two of those former Muck Boot distributors—Team J Sales and Marketing, Inc. ("Team J") and Co-Operative Feed Dealers, Inc. ("CFD")—approached Donohue about creating a new line of boot products. Ex. P-11; Trans. I at 229-30. Donohue accepted the offer and selected the name DRYSHOD as the name of the new brand.

---

[1] Haas Outdoors is not alone in its acronym usage. The defendant Donohue frequently has referred to MOSSY OAK as MO in emails and memos to his distributors, employees, and Haas Outdoors. *See* Exs. P-33 (at p. 2), P-46 (at p. 1 & 2). Indeed, this proclivity for abbreviations extends to Muck Boot Company, which he refers to as "MBC" (Ex. P-11; Trans. I at 237), and Dryshod, which he refers to as "DS" (Ex. P-13; Trans. I at 246).

9.      From that point forward, Donohue and Dryshod started down a path of mimicry by copying Muck Boot's product line and ultimately adopting the well-known abbreviation for Haas Outdoors's MOSSY OAK BREAK-UP mark as Defendants' mark for their camouflage boots.

10.     The rationale for Defendants' course of conduct is clear. Muck Boot had a license for MOSSY OAK BREAK-UP and used Haas Outdoors's pattern for its popular hunting boot series, the Woody Max. Exs. P-6 & P-12 (at p. 2). Defendants wanted to copy the success of the Woody Max and other Muck Boot products. Exs. P-11 & P-13. And from the beginning, the distributors had asked Dryshod to use MOSSY OAK products on Dryshod's camouflage boot models. Ex. P-12. Donohue had assured them that Dryshod would "only use genuine license [sic] camo patterns from Haas/Mossy Oak and Real Tree." Ex. P-11.

11.     Very early in the product development stage, Donohue—prior to even meeting with his distributors—created a list of potential product names for his boots. In addition to REALTREAT, a term similar to the trademark of Realtree Outdoors, another large camouflage manufacturer, Donohue selected the term MOBU MAX. Ex. P-10; Trans. I at 236-39. On May 17, 2017, Josh Lincoln, an employee of CFD who was answering a request from Donohue concerning product names, documented his confusion over the MOBU MAX name. In an email attachment to Donohue, Lincoln wrote: "MOBU meaning MOSSY OAK BREAK-UP?" Ex. P-19 (at p. 3). As indicated by Donohue, the MOBU MAX was intended to compete head-to-head with Muck Boot's Woody Max, which was decorated in MOSSY OAK BREAK-UP camouflage. *Id.*

12.     Donohue claimed at trial that his use of the term MOBU was completely arbitrary and never stood for MOSSY OAK BREAK-UP Trans. I at 239-40. This claim, however, is not credible in light of the documentary evidence. Specifically, Donohue admits in his June 15, 2017 email to his overseas employee discussing Dryshod's MOBU camouflage boots that Defendants

selected the MOBU name because it means MOSSY OAK BREAK-UP: "I'm slightly stuck regarding the models with camo. 'MOBU' was originally supposed to refer to 'Mossy Oak Break-Up'." Ex. P-2022.

13.     Donohue, when asked about this email, continued to insist that MOBU was not originally supposed to refer to MOSSY OAK BREAK-UP: "Well I know this looks damning, but I think it was referring to when I started with Peipei and that was not until I got to the factory but I had already come up with a MOBU name. But you know I admit that it looks damning but it's not...." Trans. II at 25-26. The Court does not find Donohue's attempt to explain away the plain language of his email to his employee sufficient. By his own assertion, he claimed that the term MOBU was originally intended to refer to MOSSY OAK BREAK-UP.

14.     Aside from this admission, Donohue, in emails to the distributors and his employees, subsequently affirmed his understanding that MOBU stood for MOSSY OAK BREAK-UP. In one email he wrote: "We have failed on making our own camo pattern and will need to use licensed material from either Mossy Oak or True Timber. I prefer Mossy Oak since that will allow us to continue using the MOBU name for our camo boots." Ex. P-42.

15.     Similarly, on June 6, 2017, Donohue stated that, "We are working with Honor on a camo print. I have some issues with Mossy Oak regarding their licensing fees, costs and restrictions on using a third party to apply the Hydrokote [Dryshod's waterproofing treatment]. If we can do our own camo print, it will still be referred to as MOBU, which stands for, "My Own Break-Up." Ex. P-31 (emphasis added).

16.     Shortly thereafter, and with licensing talks with Haas Outdoors dormant, Donohue emailed his distributor about the possibility of using Truetimber's camouflage pattern instead of MOSSY OAK BREAK-UP. In assessing this option, Donohue noted, "The down side is, the

material would not be Mossy Oak or 'My Own Break-Up' so, the MOBU name would be in jeopardy. With MOBU, it might look like we are trying to pass off True Timber as Mossy Oak. That wouldn't make anyone happy." Ex. P-33. This comment is a recognition by the Defendants of the likelihood of confusion created by their use of the MOBU mark.

17.     Ultimately, the Defendants and distributors decided to use their own camouflage pattern, and rather than change the name of that pattern, Donohue decided to take Haas Outdoors's MOBU mark and use it for Dryshod's pattern. At first, Donohue attempted to explain away his use of MOBU as standing for "My Own Break-Up." Indeed, on early boots Dryshod affixed a tag which is included as a part of Exhibit P-66. The tag stated, "Rather than get caught-up in today's camo wars, we decided to make our own. It's called **MOBU** – short for '**My Own Break-Up**'," creating a clear reference to Haas Outdoors's registered BREAK-UP mark. *Id.* (emphasis in original).

18.     Donohue's explanation of the hang tag further demonstrates the problem: "As you will see, I included an explanation for the name and cast it as acronym for, 'My Own Break-Up.' I did this just in case Mossy Oak took exception to the MOBU name <u>as a way to confuse the public into thinking MOBU was short for Mossy Oak Break-Up.</u>" Ex. P-60 (emphasis added). In response to a distributor's approval of the tag, Donohue stated in the same email string, "Glad you like it. I really struggled on the MOBU tag. Thought there was a chance people could think we were being cheap or weasely." *Id.*

19.     After Dryshod adopted the tag, Donohue was subsequently informed by one of his distributors that, "Just heads up, I heard yesterday that 'break-Up' may be trade marked by Mossy Oak. You may want to look into that." Ex. P-67. And as a result, Donohue subsequently made the decision to take the tags off the boots in light of Haas Outdoors's Registration for the BREAK-UP

trademark. Trans. II at 82-83. Thus, if the tag had the purpose of avoiding confusion between Defendants' MOBU mark and MOSSY OAK BREAK-UP (abbreviated as MOBU), that remedy was abandoned with the removal of the disclaimer tags from Defendants' camouflage boots, leaving consumers confused as to the relationship between the products.[2]

20.     Finally, around May 15, 2018, the Defendants and Distributors made the decision to rename the Dryshod boots bearing the camouflage pattern to NOSHO instead of MOBU. *See* Exhibit P-88; Trans. II at 83-84.[3]

21.     The testimony of Donohue and, more importantly, the exhibits referencing Defendants' pre-litigation communications, indicate that Defendants understood that MOBU was a well-known abbreviation for MOSSY OAK BREAK-UP. The evidence shows that they intended to use that abbreviation originally because they planned on using MOSSY OAK BREAK-UP for Dryshod's boots. Upon creating their own pattern, rather than changing the name of the product, Defendants chose instead to retain MOBU to describe their own product despite recognizing that Haas Outdoors might take exception "to the MOBU name as a way to confuse the public into thinking that MOBU was short for Mossy Oak Break-Up." In actuality, by using MOBU on their own pattern Defendants were "trying to pass off the pattern as Mossy Oak." *See* Ex. P-33.

---

[2] Although the Court has ruled that the similarities between Defendants' camouflage pattern and the MOSSY OAK NEW BREAK-UP pattern do not reach the level of copyright infringement, the similarities nonetheless contribute to consumer confusion and provide evidence of Defendants' intent in adopting the MOBU mark to be used with a similar pattern.

[3] Defendants' voluntary cessation of use of MOBU was half-hearted. Donohue stated he intended to retain his MOBU trademark registration for use in the future, *see* D-201 at p. 5(f), and he has not withdrawn his pending trademark registration for MOBU, *see* Trademark Application for Serial No. 87,778,784.

22.     Dryshod products are sold, among other locations, at "big box" stores such as Cabela's and Bass Pro Shop, as well as on the internet, trade shows and through the Distributors. Trans. I as 221-23.

23.     In accordance with the Conclusions of Law herein, the Court makes the following specific findings of fact:

24.     The Defendants' use of MOBU is likely to cause mistake or confusion as to Haas Outdoors's registered MOSSY OAK and BREAK-UP trademarks, or likely to deceive as to some affiliation, connection, or association of Defendants with Haas Outdoors, or as to the origin, sponsorship, or approval of Defendants' goods by Haas Outdoors.

25.     At the time Defendants adopted the MOBU mark, they knew that MOBU was a recognized shorthand form for MOSSY OAK BREAK-UP.

26.     MOBU is an acronym for MOSSY OAK BREAK-UP commonly used by Haas Outdoors, its licensees, merchants, and the consuming public to refer to MOSSY OAK BREAK-UP.

27.     Haas Outdoors owns valid rights in the mark MOBU.

28.     Haas Outdoors is the senior user of MOBU, and it has priority over Defendants' use of MOBU because Haas Outdoors's use, or the use by the public, dates back at least to 2008.

29.     Haas Outdoors's mark, MOBU, is inherently distinctive and/or has acquired distinctiveness solely to indicate that Haas Outdoors is a source of goods.

30.     Defendants' use of MOBU is likely to cause mistake or confusion, or likely to deceive as to some affiliation, connection, association of Defendants with Haas Outdoors's unregistered MOBU mark, or as to the origin, sponsorship, or approval of Defendants' boots by Haas Outdoors.

31.     Defendants applied to register the MOBU mark with the PTO after Haas Outdoors's

placed them on express notice of infringement by suing them.

32.     Defendants have willfully infringed Haas Outdoors's trademarks.

33.     Haas Outdoors is entitled to an Order directing the PTO to refuse registration of

Defendants' trademark application bearing Serial No. 87,778,784 for the MOBU mark.

34.     Haas Outdoors is entitled to a permanent injunction prohibiting Defendants, their

agents, partners, affiliates or any person in active concert with them from any use of the MOBU,

MOSSY OAK or BREAK-UP marks, or any mark confusingly similar to the MOBU, MOSSY

OAK or BREAK-UP marks. The Court so orders that Defendants are hereby enjoined.

35.     Haas Outdoors is entitled to an award of damages after the Court hears expert

testimony on the subject.

## CONCLUSIONS OF LAW

### 1. Trademark infringement

36.     A trademark is any word, name, symbol, device, or any combination thereof used

by a person to identify and distinguish that person's or company's goods and indicate the source

of the goods. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

37.     The first person or company to use a trademark in the marketplace as a source of

origin acquires the right to prevent others from using the same or a similar mark that is likely to

cause confusion in the marketplace. *See Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d

214, 217 (5th Cir. 1985).

38.     In an action for trademark infringement, the owner of a valid mark, whether

registered or unregistered, may enforce the right to prevent others from using the same or a similar

mark that is likely to cause confusion in the marketplace. *See Amazing Spaces, Inc. v. Metro Mini*

*Storage*, 608 F.3d 225, 236 n.8 (5th Cir. 2010). The same standards apply to claims of infringement of registered and unregistered marks. *Id.*

39.    Haas Outdoors contends that Defendants, by using the MOBU mark on their camouflage boots, have infringed Haas Outdoors's federally registered MOSSY OAK and BREAK-UP trademarks. Haas Outdoors also contends that Defendants' use of the MOBU mark has infringed Haas Outdoors's unregistered MOBU mark, which is an acronym consumers, Haas Outdoors, and the public use to abbreviate the marks MOSSY OAK BREAK-UP. Haas Outdoors's claims for trademark infringement of registered and unregistered marks arise under federal law (Lanham Act) and state law (Mississippi and Texas).

40.    To prevail on a trademark infringement claim, Haas Outdoors must show, by a preponderance of the evidence, (1) ownership in a legally protectable mark, and (2) infringement resulting from a likelihood of confusion. *Bd. of Supvrs. for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008). The same standards apply to Haas Outdoors's claims for infringement under state law and for unfair competition. *E.g.*, *Viacom Int'l Inc. v. IJR Capital Invs., LLC*, 242 F. Supp. 3d 563, 568 (S.D. Tex. 2017).

41.    To be legally protectable, a mark must be either (a) inherently distinctive or (b) have acquired distinctiveness through secondary meaning. In assessing the distinctiveness of a word mark, the Fifth Circuit relies on the categories set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (noting that the Fifth Circuit relies on the spectrum set forth in *Abercrombie* to determine the distinctiveness of a word mark).

42.     Categorization of a word mark is important because the assignment "determines whether or not, or in what circumstances, the word or phrase is eligible for trademark protection." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990). For example, generic terms are never eligible for trademark protection, while descriptive terms "may only be protected after proof of secondary meaning." *Id.* Meanwhile, suggestive, arbitrary, or fanciful terms "are all protectable without proof of secondary meaning." *Id.* Importantly then, proof of secondary meaning is not required if the mark is at least suggestive. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009).

43.     An owner of a trademark may obtain a certificate of registration issued by the PTO and submit that as evidence of the validity, protectability, and ownership of a trademark. Indeed, the PTO's certificate of registration creates a presumption that the mark is valid and owned by the holder of the certificate. *Amazing Spaces, Inc.*, 608 F.3d at 237; 15 U.S.C. § 1057(b). The parties have stipulated that Haas Outdoors owns valid certificates of registration for the MOSSY OAK and BREAK-UP marks.

44.     Haas Outdoors claims trademark rights in the unregistered mark MOBU as an acronym that abbreviates, and is a well-known nickname for, its registered marks MOSSY OAK and BREAK-UP. Haas Outdoors may obtain trademark rights through actual use in commerce of any word, name, symbol or device, or combination thereof, to identify its goods. *See Smack Apparel Co.*, 550 F.3d at 475. And "it is black letter law that a licensee's use of a mark inures to the benefit of the licensor…." *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 128 (4th Cir. 2019); *see also Turner v. HMH Publ'g Co.*, 380 F.2d 224, 229 (5th Cir. 1967). In determining whether the use in commerce is sufficient to create trademark rights in Haas Outdoors, courts often consider the totality of the circumstances. *E.g.*, *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*,

188 F.3d 427, 433 (7th Cir. 1999). Use is sufficient to establish trademark rights if the use is public enough so that it identifies or distinguishes the marked goods in an appropriate segment of the public as those of the person using the mark. *See Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975).

45.    Haas Outdoors also may obtain trademark rights through the use by the public of an abbreviated term or nickname to identify a particular Haas Outdoors product. In applying this so-called "Public Use Doctrine," several courts have observed that "'Americans are prone to abbreviate recognized trademarks and to use nicknames," and "[s]uch abbreviations and nicknames are just as entitled to legal protection as the original full trademark.'" *The Saul Zaentz Co. d/b/a Tolkien Enters. v. Bumb,* 2010 TTAB LEXIS 268, at *13-15 (T.T.A.B. 2010); *see also Nat'l Cable TV Ass'n v. Am. Cinema Eds., Inc.* 937 F.2d 1572, 1577-78 (Fed. Cir. 1991); *Volkswagenwerk Ag v. Hoffman*, 489 F. Supp. 678, 681 (D.S.C. 1980) (citing *Coca-Cola Co. v. Koke Co. of America*, 254 U.S. 143 (1920); and *Howard Johnson Co. v. Ho-Jo Campsites, Inc.*, 273 F. Supp. 447 (M.D. Fla. 1967)); *Volkswagon Werk Aktiengesellschaft v. Thermo-Chem Corp.*, 1975 TTAB LEXIS 30, at *5 (T.T.A.B. 1975).

46.    The body of case law addressing the Public Use Doctrine is relatively limited. It is not surprising, then, that the Fifth Circuit has not yet had the opportunity to address it. This is no impediment to application of it here. The Fifth Circuit has identified *McCarthy on Trademarks and Unfair Competition* as a "leading treatise" and cited it favorably on many occasions for novel points of trademark or unfair competition law. *See Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 428 (5th Cir. 2021). This treatise has squarely and persuasively addressed the Public Use Doctrine and "agrees with the line of cases that uphold trademark rights in nickname and abbreviations used only by the public." J. Thomas McCarthy, *McCarthy on Trademarks and*

*Unfair Competition* § 7:18 (5th ed. 2021 Update). The rationale for the Public Use Doctrine strikes at the core of trademark law. "It is public use that will set the stage for confusion, which is the evil to be remedied in trademark cases." *Id.*; *see also Union Nat'l Bank*, 909 F.2d at 843-44 ("These limitations are manifestations of the two principal concerns of trademark law…: (1) to protect consumers against confusion and monopoly, and (2) to protect the investment of producers in their trade names to which goodwill may have accrued and which goodwill free-riders may attempt to appropriate by using the first producer's mark, or one that is deceptively similar.").

47.     McCarthy is not alone in his academic commentary on and approval of this doctrine. Another commentator, Peter M. Brody, reasons that "the public's use of a nickname for a brand effectively constitutes *constructive* use by the owner of the underlying brand." Peter M. Brody, *What's In A Nickname? Or, Can Public Use Create Private Rights*, 95 Trademark Rpt. 1123, 1144 (Dec. 2005) (construing, among others, *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999)). Brody's article, which discusses in detail much of the existing case law, provides ample support for the principle that use of an abbreviation or nickname—even if only by the public—creates trademark rights in the owner of the abbreviated mark.

48.     This Court finds the above-cited court decisions and academic authority persuasive and agrees that Haas Outdoors has obtained ownership rights prior to Defendants in the MOBU mark. *See*, *e.g.*, *Johnny Blastoff, Inc.*, 188 F.3d at 434 (finding rights solely from public use); *Pieper v. Playboy Enters.*, 179 U.S.P.Q. (BNA) 318, 320 (T.T.A.B. 1973) (finding publisher of "Playboy" magazine had superior rights in "BUNNY CLUB" mark as a result of public use even though it had not actually used the mark). This is based on the extensive use by the public, specifically consumers, including Haas Outdoors's licensees, of the acronym MOBU to refer to

MOSSY OAK BREAK-UP.[4] Haas Outdoors has itself used this acronym in some of the correspondence admitted into evidence, and it has used the component part MO for MOSSY OAK and BU for BREAK-UP in some of its license agreements. This public usage dates back at least to 2008, which gives Haas Outdoors priority over Defendants' use in 2017 and 2018 of the MOBU mark. There is also no evidence that Haas Outdoors has discouraged or prohibited the public use of this abbreviation, which further supports Haas Outdoors's claim of ownership. *See* Brody, *supra*, at 1164. Finally, it is material that Defendants and their Distributors have admitted in their internal correspondence that MOBU is used as an abbreviation for MOSSY OAK BREAK-UP. *See Gen. Motors Corp. v. P.C.H., Inc.*, 2001 TTAB LEXIS 226, at *2 (T.T.A.B. 2001) (noting that the defendant admitted his use of the mark "Vette" was "synonymous" with plaintiff's "Corvette" mark).

49.     Having established Haas Outdoors's ownership of rights in the MOBU mark, the Court next addresses mark validity. The MOSSY OAK and BREAK-UP marks are presumptively valid because of the certificate of registration. Moreover, because the marks have been registered and in continuous use for more than five years, they are "incontestable" and therefore "conclusively presumed to be nondescriptive or to have acquired secondary meaning." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980); 15 U.S.C. § 1065. Even if BREAK-UP

---

[4] Defendants argue that usage of the term MOBU by Haas Outdoors's licensees does not constitute trademark usage. The evidence is to the contrary. For example, Exhibit P-2004 reflects a product whose name, or source identifier, includes the term MOBU. This is trademark usage. *See Smack Apparel Co.*, 550 F.3d at 475 ("The Lanham Act provides that a trademark may be 'any word, name, symbol, or device, or any combination thereof' that is used or intended to be used 'to identify and distinguish' a person's goods 'from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'"). Indeed, there is no evidence that licensees' uses of MOBU serve any purpose other than to distinguish products bearing Haas Outdoors patterns from other products. Thus, even if characterized as a color code, SKU code, or otherwise, all such uses of MOBU serve to distinguish products bearing MOSSY OAK BREAK-UP from the products of others.

were not incontestable,[5] Haas Outdoors has provided significant evidence in the form of marketing, advertisements, usage, and witness testimony to demonstrate the mark has acquired significant secondary meaning, and that it is highly distinctive and strongly associated by the consuming public with Haas Outdoors.

50.     In determining whether MOBU is a valid trademark the Court assesses its distinctiveness. Distinctiveness refers to how strongly the mark identifies a product with Haas Outdoors and is an important factor to consider in assessing whether the mark is valid. To determine if Haas Outdoors has met its burden of showing that MOBU is a valid trademark, the Court must first classify it on the spectrum of trademark distinctiveness. Trademark law provides great protection to distinctive trademarks. On the other hand, trademarks that are not as distinctive receive less protection, and trademarks that are not distinctive at all are entitled to no trademark protection.

51.     A *generic* term "identifies a genus or class of things or services, of which the particular item in question is merely a member." *Xtreme Lashes, LLC*, 576 F.3d at 232. A *descriptive* term, on the other hand, "identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 539 (5th Cir. 2015). Meanwhile, a *suggestive* term "suggests rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of goods and services." *Union Nat. Bank*, 909 F.2d at 845. Finally, arbitrary and fanciful terms "are either coined words or words which are not suggestive of the product or service." *Id.* Arbitrary terms refer "to ordinary words which do not suggest or describe the services involved." *Id.*

---

[5] There is no dispute that MOSSY OAK is both incontestable and arbitrary.

52.     In determining whether a mark is descriptive or suggestive, the Fifth Circuit uses the "imagination test," which "seeks to measure the relationship between the actual words of the mark and the product to which they are applied." *Nola Spice Designs*, 783 F.3d at 539. "If a word requires imagination to apply it to the product or service in question, it tends to show that the term as used is suggestive. On the other hand, if the word conveys information about the product, it is descriptive." *Id.*

53.     When categorizing a mark, courts "must examine the context in which the term is used." *Id.* at 537. Relevant questions include "how the term is used with other words, the products or services to which it is applied, and the audience to which the relevant product or service is directed." *Id.* The Supreme Court has expressly approved application of the *Abercrombie* test to determine the distinctiveness of common-law word marks: "In the context of word marks, courts have applied the now-classic test originally formulated by Judge Friendly, in which word marks that are "arbitrary ("Camel" cigarettes), "fanciful" ("Kodak" film), or suggestive ("Tide" laundry detergent) are held to be inherently distinctive." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210 (2000) (citing *Abercrombie*, 537 F.2d at 10-11).

54.     The Court finds that the MOBU mark is highly distinctive because it is arbitrary with respect to Haas Outdoors's camouflage goods it identifies. The mark itself has no meaning other than as an abbreviation of Haas Outdoors's distinctive and combined commercial usage of the phrase MOSSY OAK BREAK-UP. As the Fourth Circuit recognized, abbreviations or nicknames are unique in that they add distinctiveness to the unabbreviated mark. *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 404 (4th Cir. 2009) (rejecting attempt to apply an inverted or backward form of the public use doctrine by elongating an acronym to cover the underlying abbreviated words). For example, "Bud" adds distinctiveness to the mark "Budweiser"

and "Coke" add distinctiveness to "Coca-Cola." *Id.* Thus, when Haas Outdoors or the public use MOBU, this use not only identifies two separate Haas Outdoors marks, but such usage also mirrors the specific order and presentation of those two marks as the combined commercial phrase MOSSY OAK BREAK-UP.[6]

55.    The second factor of a trademark infringement action is whether there is a likelihood of confusion. The likelihood of confusion test applies not only to claims of trademark infringement (registered and unregistered marks), but also to claims of false designation of origin and unfair competition. *See Two Pesos, Inc.*, 505 U.S. at 780-81.

56.    "Likelihood of confusion means more than a mere possibility; the plaintiff must demonstrate a probability of confusion." *Xtreme Lashes, LLC*, 576 F.3d at 226 (citing *Smack Apparel Co.*, 550 F.3d at 478). Courts employ a non-exhaustive list of eight "digits of confusion" to evaluate whether there is a likelihood of confusion: (1) strength of the plaintiff's mark, (2) similarity the defendant's use to the plaintiff's mark, (3) similarity of the products, (4) identity of the retail outlets and purchasers, (5) identity of the advertising media used, (6) intent to infringe, (7) evidence of actual confusion, and (8) degree care exercised by potential consumers. *Id.* No one digit is dispositive and the analysis of the digits, including whether to consider other evidence, varies based on the context of the case. *Id.* Under this analysis, courts must be mindful of the

---

[6] Relying on a Federal Circuit decision, Defendants suggest that Haas Outdoors was required to conduct a survey concerning mark distinctiveness. Defendants' argument is contrary to Fifth Circuit law, which requires no such survey. *See Nola Spice Design*, 783 F.3d at 546 ("While survey evidence is not required to establish secondary meaning, it is 'the most direct and persuasive way of establishing secondary meaning.'" (citation omitted)). Indeed, it is troubling that Defendants argue the lack of a survey is material when they recognized the need for a voluntary disclaimer because of the likelihood of confusion between MOBU and MOSSY OAK BREAK-UP.

relevant marketplace and market conditions a potential consumer is likely to encounter. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 197 (5th Cir. 1998).

57.     The first digit considers the strength of the plaintiff's mark to determine how much protection should be afforded to the mark by evaluating the mark's position on the spectrum of distinctiveness and the mark's standing in the marketplace. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008). On the spectrum of distinctiveness, arbitrary and fanciful marks are the strongest marks while descriptive marks are weak and generic marks are entitled to no protection. *Two Pesos, Inc.*, 505 U.S. at 768.

58.     The Court finds that the MOBU mark and the phrase comprising the two registered trademarks it abbreviates—MOSSY OAK BREAK-UP—are strong marks. The MOBU mark is arbitrary when standing alone and highly distinctive as an acronym because it abbreviates two separately registered marks as they appear in the specific commercial arrangement used by Haas Outdoors in its marketing material and as affixed to its goods (*e.g.*, pattern watermarks). This abbreviation adds distinctiveness to the MOSSY OAK BREAK-UP marks by reflecting the recognition of the public of the commercial impression created by Haas Outdoors's use of the marks together. Further, the extensive use by the public (and licensees and Haas Outdoors) of MOBU as shorthand for MOSSY OAK BREAK-UP evidences a strong association by the public itself between this abstract mark (MOBU) with Haas Outdoors and its goods. *Cf.* Brody, *supra*, at 1161. This third-party use demonstrating a strong association between the marks among the consuming public is relevant to demonstrate strength of a mark. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 454 (5th Cir. 2017) (quoting *Elvis Presley Enters.*, 141 F.3d at 203). This factor weighs in favor of Haas Outdoors.

59.    Under the second digit, similarity between the defendant's use and the plaintiff's mark, courts "compare the marks' appearance, sound, and meaning" to determine the extent to which the marks are similar and whether "purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enters., Inc.*, 141 F.3d at 201 (citations and quotations omitted). "Similarity is not limited to the eye or ear," and the mental impact of similarity of meaning can outweigh visual or audible differences. McCarthy, *supra*, § 23:26. "'Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association.'" *Streamline Prod. Sys.*, 851 F.3d at 454 (quoting *Xtreme Lashes*, 576 F.3d at 228); *accord Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958) ("It is not necessary for similarity to go only to the eye or the ear for there to be infringement. The use of a designation which causes confusion because it conveys the same idea, or stimulates the same mental reaction, or has the same meaning is enjoined on the same basis as where the similarity goes to the eye or the ear.").

60.    Defendants' use of MOBU is identical to the acronym MOBU that abbreviates MOSSY OAK BREAK-UP. This weighs strongly in favor of Haas Outdoors. As to the comparison between Defendants' use of MOBU and the unabbreviated marks MOSSY OAK BREAK-UP, it is not necessary that the mark used by Defendants be an exact copy of Haas Outdoors's unabbreviated marks. Rather, Haas Outdoors need only demonstrate that, when viewed in its entirety, Defendants' use of their mark is likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public as to the source, origin, sponsorship, or approval of the product or service in question, or as to affiliation, connection, or sponsorship. As one commentator explained, the "public's association of the nickname with the brand owner or

its goods or services—an association created by the public itself—establishes an identity of meaning between the nickname and brand that renders the two 'similar' for purposes of the likelihood of confusion test." Brody, *supra*, at 1161. Because of this strong similarity in meaning created by the public use of MOBU, the Court also finds similarity between Defendants' use of MOBU and Haas Outdoors's MOSSY OAK and BREAK-UP marks.

61.     Generally under the third digit, "[t]he greater the similarity between products and services, the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exch.*, 628 F.2d 500, 505-06 (5th Cir. 1980). The same is true for the fourth digit (retail outlets for and the predominant consumers) and the fifth digit (advertising). *Id.* "If a company sells to resellers, that may increase the likelihood of confusion because buyers cannot compare the products side by side." *Streamline Prod. Sys.*, 851 F.3d at 455 (quoting *Xtreme Lashes*, 576 F.3d at 228) (cleaned up).

62.     The third digit weighs in favor of Haas Outdoors because both it and Defendants are engaged in the business of supplying intellectual property in connection with the use of camouflage footwear products. Defendants' internal emails confirm this by acknowledging competition with Haas Outdoors and other camouflage makers, such as Realtree and Truetimber. Defendants classify these camouflage makers as participants in so-called "camo wars." Clearly Haas Outdoors and Defendants are competing in the same industry or market. The fourth and fifth digits also weigh in favor of Haas Outdoors because both parties' products are marketed and sold on the internet and in retail stores, such as Cabela's and Bass Pro Shop, and generally to the same hunting segment of consumers. Although Defendants do not sell the products directly, but instead are paid a fee for each pair purchased by their distributors, this does not lessen the likelihood of confusion. On the contrary, there remains a likelihood of confusion when the distributors resell the product to retailers, and then again when the retailers resell the goods to the end user. A consumer

encountering Defendants' product on the shelf at Bass Pro Shop or a local Co-Op bearing the mark MOBU and clad in camouflage is likely to be confused into thinking that the product has some association with, is a licensee of, or has been approved by Haas Outdoors.

63.     Under the sixth digit, courts consider whether the defendant intended to copy the plaintiff's mark or benefit from the plaintiff's reputation. *Oreck Corp. v. U.S. Floor Sys.*, 803 F.2d 166, 173 (5th Cir. 1986). Evidence of intent is not required. *See Smack Apparel Co.*, 550 F.3d at 481. But when there is intent, that fact "may alone be sufficient to justify an inference that there is a likelihood of confusion." *See id.* (citing *Elvis Presley Enters.*, 141 F.3d at 203). Indeed, the Fifth Circuit has held that proof of intent "may provide ***compelling*** evidence of a likelihood of confusion." *Oreck Corp.*, 803 F.2d at 173 (emphasis added).

64.     The materiality of intent to the likelihood of confusion analysis is a long-established tenet of trademark law:

> [W]here as here it plainly appears that there is a purpose to reap where one has not sown, to gather where one has not planted, to build upon the work and reputation of another, the use of the advertising or trade name or distinguishing mark of another, is in its nature, fraudulent and will be enjoined.

*Aetna Cas. & Sur. Co. v. Aetna Auto Fin., Inc.*, 123 F.2d 582, 584 (5th Cir. 1941); *accord Day-Brite Lighting, Inc. v. Sta-Brite Fluorescent Mfg. Co.*, 308 F.2d 377, 383 (5th Cir. 1962). Courts have found intent present where the defendant knew of plaintiff's mark when choosing its mark and intended to capitalize on the plaintiff's popularity or used its product to trade on the plaintiff's popularity. *Labs. Pisa S.A. de C.V. v. PepsiCo, Inc.*, 2021 U.S. Dist. LEXIS 36960, at *11-12 (S.D. Tex. Feb. 27, 2021) (citing *Streamline Prod. Sys.*, 851 F.3d at 456); *see also Myo, LLC v. Brull & York, LLC*, 2019 U.S. Dist. LEXIS 3424, at *13-14 (W.D. Tex. Jan. 8, 2019) (finding there was no intent to trade on plaintiff's mark, but noting the principle) (Pitman, J.).

65.     The issue of intent is discussed at length in *Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc.* The relevant question is whether there is evidence of intent to confuse, intent to trade on the plaintiff's good will, intent to pass off goods as the plaintiff's, or generally the intent to derive benefits from the reputation or popularity of the plaintiff. *Streamline Prod. Sys.*, 851 F.3d at 455-56. This can include imitation of packaging material, copying plaintiff's distribution scheme, or having knowledge of plaintiff's mark when selecting a mark. *Id.* Indeed, even if the initial selection of a mark was not done with the intent to confuse, subsequent use of the mark in a way that "'evidenced an intent to trade on [the senior user's] reputation'" can support a finding of intent. *Id.* (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000)).

66.     Donohue's email with his assistant Peipei confirms that Defendants originally selected MOBU because it meant MOSSY OAK BREAK-UP. Ex. P-2022. Although Donohue attempted to explain away this admission during his testimony, the statement in the email is unambiguous. Donohue's post-lawsuit explanation is not credible.

67.     There is also further evidence of intent to confuse. In another email with CFD, Donohue acknowledged that it would be confusing to use the MOBU mark with a Truetimber camouflage pattern because consumers might think Defendants were trying to pass off goods as coming from Haas Outdoors. *See* Ex. P-33. The fact that Defendants ultimately used their own pattern rather than Truetimber's is immaterial. This admission confirms that Defendants knew of a likelihood of confusion of using MOBU because of the association with Haas Outdoors, yet continued with its use anyway.

68.     Defendants' intent and acknowledgment of likely confusion is further evidenced by a their creation of a hang tag claiming MOBU meant "My Own Break-Up." Ex. P-66. "[A]

voluntary disclaimer…is an acknowledgement of likely confusion among customers." *Fletcher's Original State Fair Corny Dogs, LLC v. Fletch-Warner Holdings LLC*, 434 F. Supp. 3d 473, 493 (E.D. Tex. 2020) (citing *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1550 (S.D. Tex. 1996, *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998)). Defendants ultimately abandoned this hang tag because of fear of infringing Haas Outdoors's BREAK-UP mark. But the fact that it was considered, printed, and affixed to numerous goods (before its manual removal), indicates that Defendants believed a voluntary disclaimer was necessary to avoid confusion between MOBU and MOSSY OAK BREAK-UP. *Streamline Prod. Sys., Inc.*, 851 F.3d at 455-56 (noting that even if initial selection of a mark was not done with the intent to confuse, subsequent use of the mark in a way that "'evidenced an intent to trade on [the senior user's] reputation'" can support a finding of intent). This constitutes a tacit admission by Defendants of a likelihood of confusion.

69.     Finally, Defendants continued with the use of the MOBU mark even after receiving notice of actual confusion from their own customer, CFD. In response to Defendants' request for comments on the Dryshod product line, Josh Lincoln on behalf of CFD perceived MOBU to mean MOSSY OAK BREAK-UP. Ex. P-19. Thus, even if Defendants had not admitted in an email to originally selecting MOBU because it meant MOSSY OAK BREAK-UP, the continued use of MOBU after Defendants' own customer exhibited actual confusion supports an inference of an intent to confuse. The sixth digit weighs heavily in favor of Haas Outdoors.

70.     Under the seventh digit for actual confusion, "[e]vidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Smack Apparel Co.*, 550 F.3d at 483. That being said, evidence of actual confusion is *not* required. *Id.* Actual confusion means that a consumer has been confused in identifying defendants' use of the mark as that of plaintiff's. *Streamline Prod. Sys.*,

851 F.3d at 457. "Even if initial consumer confusion is quickly dispelled, this initial misunderstanding is evidence of confusion." *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 197 (5th Cir. 2018). There is a "low bar" for actual confusion, and even "a single known incident" can be enough. *Smack Apparel Co.*, 550 F.3d at 486. But it needs to be more than a fleeting mix-up of names. *Streamline Prod. Sys.*, 851 F.3d at 457. Further, it is not necessary that an actual sale of goods arise—rather, it is enough that the confusion sway consumer purchases. *Id.* at 457-58 (citing *Xtreme Lashes*, 576 F.3d at 230; *Elvis Presley Enters.*, 141 F.3d at 204).[7]

71.     When a defendant has used a mark for a long period of time and evidence of actual confusion is lacking, that will weigh against a likelihood of confusion. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) (finding three instances of actual confusion after roughly 15 years of concurrent sales weighed against likelihood of confusion). That is not the case here because the time period was short. Haas Outdoors placed Defendants on notice of infringement of MOBU within weeks of Defendants' products hitting the market. Further, by Defendants' own admission, production of pairs bearing the MOBU mark, MOBU watermark, or both ceased within six months. *See* Ex. P-143 (showing last order date of MOBU pairs was June 2018). There was little opportunity in this short time frame to discover evidence of actual confusion. *E.g.*, *Frank Brunckhorst Co. v. G. Heileman Brewing Co.*, 875 F. Supp. 966, 980

---

[7] Survey evidence also "is not required in order to show a likelihood of confusion." *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, Civil Action No. 4:18-cv-00735-KPJ, 2020 WL 7646742, 2020 U.S. Dist. LEXIS 241364, at *8-9 (E.D. Tex. Dec. 23, 2020) (collecting cases); *Playnation Play Sys. v. Velex Corp.*, 924 F.3d 1159, 1169 (11th Cir. 2019) ("Lack of survey evidence does not weigh against the plaintiff when determining likelihood of confusion."); *see also* McCarthy, *supra*, § 32:195.

(E.D.N.Y. 1994); McCarthy, *supra*, § 23:18 (discussing need to consider the time available for actual confusion to occur when evaluating available evidence).[8]

72.     In any event, there is at least one instance of actual confusion in the record. As explained above, Josh Lincoln with CFD documented his actual confusion when he stated he thought MOBU referred to MOSSY OAK BREAK-UP. Ex. P-19.[9] Lincoln sent this communication on behalf of CFD, which is the Defendants' distributor and direct customer. Although this instance of actual confusion differs from the more typical example of a confused retail customer, it is still valid evidence of actual confusion. Several courts have observed that even non-customer confusion is admissible as anecdotal evidence of actual confusion. *Firebirds Int'l v. Firebird Rest. Grp., LLC*, 397 F. Supp. 3d 847, 867 (N.D. Tex. 2019) (refusing to reject evidence of confusion from vendors and non-purchasing third parties, but affording it less weight). Here, Lincoln was speaking on behalf of Defendants' customer and the fact that this was during development of the product CFD was planning to purchase does not impact its materiality. This digit weighs in favor of Haas Outdoors.

73.     Under the eighth digit, courts evaluate the care exercised by potential purchasers. *Id.* Consumer care generally increases when products are expensive and decreases when products

---

[8] The absence of *evidence* of actual confusion does not mean no actual confusion occurred, but rather that proof of its occurrence is lacking. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 686 (7th Cir. 2001) ("Because…instances of actual confusion may be difficult to discover, the most that the absence of evidence of actual confusion can be said to indicate is that the record does not contain any evidence of actual confusion known to the parties."); *accord Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 704 (5th Cir. 1981).

[9] The Fifth Circuit in *Streamline Products* explained that "we have previously rejected hearsay objections to indirect testimony about actual confusion, explaining that such evidence is not offered for the truth of the matter asserted but rather to show effect on consumers, namely confusion." *Streamline Prod. Sys.*, 851 F.3d at 458 (citing *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 & n. 10 (5th Cir. 1982)). Although Mr. Lincoln did not testify, his written statement is nonetheless admissible as evidence of actual confusion.

are less expensive. *Compare Gruma Corp. v. Mex. Rests., Inc.*, 497 F. App'x 392, 396 (5th Cir. 2012) (finding low degree of care for inexpensive store-bought burritos and casual dining restaurants), *with Oreck Corp.*, 803 F.2d at 173-74 (finding high level of care regarding vacuums costing in excess of a thousand dollars). Camouflage footwear products are generally inexpensive, with such goods ranging in retail price from $99 to $200. *See* Trans. III at 120. The Court finds that this factor weighs in favor of Haas Outdoors.

74.     In summary, the Court finds that Haas Outdoors has valid rights in the MOBU mark through its own use and the use by the public and Haas Outdoors's licensees of MOBU as an acronym for the registered MOSSY OAK and BREAK UP marks. The Court finds this mark is inherently distinctive under the *Abercrombie* test. The Court also finds, after weighing the relevant digits of confusion, that there is a likelihood of confusion between Haas Outdoors's MOBU mark and Defendants' use of the same mark. Additionally, there is a likelihood of confusion between Defendants' use of the MOBU mark and Haas Outdoors's MOSSY OAK BREAK-UP marks in light of the strong public association of MOBU with those terms. Accordingly, the Court finds that Defendants have infringed Haas Outdoors's trademark rights, and the Defendants are hereby permanently enjoined from infringing Haas Outdoors's MOBU, MOSSY OAK, and BREAK-UP marks.[10]

## 2. Cancellation

75.     The Lanham Act authorizes this court to "order the cancellation of registrations, in whole or in part." 15 U.S.C. § 1119. Section 2(d) of the Lanham Act provides that the PTO

---

[10] As explained above, state law trademark infringement and federal unfair competition doctrines apply the same likelihood-of-confusion framework. Accordingly, the Court also finds for the same reasons that Defendants have infringed Haas Outdoors's marks under Texas and Mississippi state law, and that Defendants' use of the MOBU mark constitutes unfair competition in violation of the Lanham Act.

may refuse to register a trademark that "[c]onsists of or comprises a mark which so resembles…a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). "The test under § 2(d) is the same likelihood-of-confusion analysis used in trademark infringement cases." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711-12 (S.D. Tex. 2009) (citations omitted).

76.     Haas Outdoors has demonstrated that Defendants' MOBU mark is likely to cause confusion with Haas Outdoors's unregistered MOBU mark and its registered MOSSY OAK and BREAK-UP marks. Under the identical § 1052(d) analysis, Defendants' MOBU mark is also likely to cause confusion with Haas Outdoors's marks. *See RE/MAX Int'l Inc.*, 655 F. Supp. 2d at 712 (ordering cancelling); *see also American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 13-14 (5th Cir. 1974) (ordering cancellation because the "[Lanham] Act's purposes would be served by ordering the cancellation of the registration."). Accordingly, the Court orders cancellation of Defendants' application for registration of MOBU bearing Serial No. 87,778,784.

### 3. Damages

77.     If successful in proving trademark infringement, Haas Outdoors may recover a reasonable royalty rate for Defendants' infringement. 15 U.S.C. § 1117; *Streamline Prod. Sys.*, 851 F.3d at 459-61. Haas Outdoors also may recover Defendants' profits reasonably related to the infringement. *Streamline Prod. Sys.*, 851 F.3d at 459-61.

78.     To determine a reasonable royalty rate the Court should consider the fair market value of the rights infringed, or, in other words, what a hypothetical license from Haas Outdoors might have charged Defendants for the rights infringed. *Id.* This should be an amount that is rationally related to the scope of Defendants' infringement. In other words, there must be a

correlation between (1) the rights infringed by Defendants and (2) the royalty damages awarded to Haas Outdoors. *See id.*

79.     In addition to actual damages, Haas Outdoors is entitled to recover any of Defendants' profits that are attributable to the infringement. 15 U.S.C. § 1117; *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1496 (2020) (finding willfulness not required for an award of profits). The Court may not, however, include in an award of Defendants' profits any amount that was already included in Haas Outdoors's reasonable royalty damages. As with copyright infringement, Haas Outdoors need only establish Defendants' gross revenue, while Defendants must demonstrate properly deductible expenses. *Seatrax, Inc. v. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000).

80.     "Courts may enhance damages to 'provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from [the] defendant's conduct.'" *Premier S., LLC v. Premier Roofing LLC*, No. 17-CV-00316-BAJ-EWD, 2019 WL 6976025, 2019 U.S. Dist. LEXIS 219446, at *4 (M.D. La. Dec. 20, 2019) (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991)). "'An enhancement of damages may be based on a finding of willful infringement.'" *Id.* Courts may also award attorneys' fees in an "exceptional case," which is one where "(1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). "A case is also exceptional when 'the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful.'" *Viahart v. Does*, No. 6:18-CV-604-RWS-KNM, 2021 WL 777083, 2021 U.S. Dist. LEXIS 37579, at *18

(E.D. Tex. Jan. 29, 2021) (quoting *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992)).

81.     Finally, a prevailing plaintiff is entitled to recover costs of the action. 15 U.S.C. § 1117(a).

82.     This Court previously bifurcated expert testimony on damages. Therefore, it reserves ruling on the damages owed to Haas Outdoors for the aforementioned infringement and unfair competition until the parties' experts can be heard.

Dated: December 6, 2021

Respectfully submitted,

HAAS OUTDOORS, INC.

By Its Attorneys,
JONES WALKER LLP

By:  *s/ Andrew S. Harris*
ANDREW S. HARRIS

W. WHITAKER RAYNER (MS Bar No. 4666) (*pro hac vice*)
ANDREW S. HARRIS (MS Bar No. 104289) (*pro hac vice*)
JONES WALKER LLP
190 East Capitol Street, Suite 800
Jackson, Mississippi 39201
Tel.: (601) 949-4900; Fax: (601) 949-4804
wrayner@joneswalker.com
aharris@joneswalker.com

KRYSTAL P. SCOTT
Texas Bar # 24056288
JONES WALKER LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Tel.: 713-437-1816; Fax: 713-437-1810
kscott@joneswalker.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed a true and correct copy of the above and foregoing document electronically via the Court's CM/ECF system, which sent notice to all counsel of record.

Dated: December 6, 2021

*s/ Andrew S. Harris*
ANDREW S. HARRIS